600 A.2d 260

**NATIONAL SOLID WASTES MANAGEMENT ASSOCIATION, Petitioner,**

v.

**Robert P. CASEY, Governor and Department of Environmental Resources, Respondents.**

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 1991.

Decided Nov. 25, 1991.

William J. Winning, for petitioner.

Amy L. Putnam, Deputy Gen. Counsel, for respondents.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, McGINLEY, SMITH and PELLEGRINI, JJ.

COLINS, Judge.

Presently before this Court is a motion for summary judgment filed by petitioner, National Solid Wastes Management Association (Association) and a motion to strike certain portions of petitioner's memorandum of law filed by respondents, the Honorable Robert P. Casey, Governor of the Commonwealth of Pennsylvania (Governor), and the Pennsylvania Department of Environmental Resources (DER) (collectively, the Commonwealth).

The Association petitioned this Court for relief from Executive Order 1989–8 issued by the Governor on October 17, 1989 and published in the Pennsylvania Bulletin on October 28, 1989. Initially, the Association's petition contained three counts for relief, the first alleging a constitutional violation of the separation of powers, the second seeking relief in mandamus, and the third seeking declaratory relief. This Court, in an opinion filed September 11, 1990,[1] ruled on the Commonwealth's preliminary objections by dismissing the first and second counts of the Association's petition. Therefore, the only relief now sought by the Association is a declaratory judgment that Executive Order 1989–8 is invalid.

Section 1 of Executive Order 1989–8 requires DER to stop reviewing applications or issuing permits for new municipal waste landfills or new resource recovery facilities, except in certain limited situations, until the Pennsylvania Municipal Waste Management Plan is adopted pursuant to that same executive order. Applications will be reviewed if the applicant shows first, a need for additional capacity and second, that at least 70% of the municipal waste to be received at that facility will be generated in Pennsylvania. Also pursuant to Section 1, an existing municipal waste landfill which is permitted but which seeks to expand its capacity to accept waste must establish first, a need for that additional capacity and second, that at least 70% of the municipal waste received is generated in Pennsylvania.

Section 2 of Executive Order 1989–8 requires DER to establish maximum and average waste volume limits for each operating landfill. Said limits are to be based on the actual daily volume disposed at that landfill during the period from October 26, 1988 to June 30, 1989. Section 2 also requires DER to order that all permits be immediately modified to limit disposal to the average volume currently accepted.

1. *National Solid Wastes Management Ass'n v. Casey*, 135 Pa.Commonwealth Ct. 134, 580 A.2d 893 (1990). (*Association I* ).

Section 3 of Executive Order 1989–8 requires DER to prepare a Pennsylvania Municipal Waste Management Plan. The Plan must address the "generation, management, processing and disposal of municipal waste in the Commonwealth for a period of 10 years from the development of the Plan. . . ."

In its petition, the Association has alleged that Executive Order 1989–8 contravenes the Solid Waste Management Act, Act of July 7, 1980, P.L. 380, *as amended,* 35 P.S. §§ 6018.101–6018.1003 (Act 97) and the Municipal Waste Planning, Recycling and Waste Reduction Act, Act of July 28, 1988, P.L. 556, 53 P.S. §§ 4000.101–4000.1904 (Act 101). These acts, according to the Association, provide "a comprehensive legislative scheme for regulation of the operation and permitting of municipal waste landfills and for the imposition of waste volume limitations as a condition of municipal waste landfill permits." The Association states that Act 97 and the regulations promulgated pursuant to it "[set] forth extensive and detailed requirements for the operation of municipal waste landfills and the process by which municipal waste landfills are permitted in Pennsylvania." The Association further states that Act 101 "provides for the planning, processing and disposal of municipal waste by requiring all Pennsylvania counties to develop ten-year municipal waste plans by March 1, 1991[ ]" and by imposing waste volume limits for each municipal waste landfill. Basically, the Association alleges that Executive Order 1989–8 impermissibly amends Act 97, Act 101, and applicable regulations. According to the Association, Executive Order 1989–8 harms members of the Association which operate municipal waste landfills within Pennsylvania.

*Motion to Strike Certain Portions of
Petitioner's Memorandum of Law*

■ The Commonwealth's motion alleges that certain portions of the Association's memorandum of law in support of its motion for summary judgment should be struck,

because the testimony quoted therein on pages 15, 18, 19, and 20 is not part of the record before this Court and was not given in this matter. We deny the Commonwealth's motion, because the testimony of Keith C. Kerns, Chief of the Division of Waste Minimization Planning for DER's Bureau of Waste Management, is an admission, that is, an exception to the rules of evidence regarding hearsay.

The "words of a party constitute an admission and therefore may always be used against him." *Evans v. Unemployment Compensation Board of Review*, 86 Pa.Commonwealth Ct. 297, 304, 484 A.2d 822, 826–27 (1984). However, "[i]t is well settled in this Commonwealth that an agent's statements are admissible as admissions of the agent's principal only if the agent had the authority to make the statements." *Ligon v. Middletown Area School District*, 136 Pa.Commonwealth Ct. 566, 575, 584 A.2d 376, 381 (1990). Additionally, "[a]n admission need not be made to the opposing party in order to be admissible." *Whitman v. Riddell*, 324 Pa.Superior Ct. 177, 184–85, 471 A.2d 521, 525 (1984). We find that Keith C. Kerns, as Chief of the Division of Waste Minimization Planning for DER, was DER's agent and, therefore, was authorized to speak for DER, especially when testifying under oath in a proceeding before the Environmental Hearing Board. Additionally, although the statements made by him were not in this matter, they are admissible. For these reasons, we must deny the Commonwealth's motion to strike certain portions of petitioner's memorandum of law.

### Motion for Summary Judgment

Pursuant to Pa.R.A.P. 106, this Court, when addressing a matter within its original jurisdiction, follows the practice and procedure set forth in the rules of civil procedure. With regard to motions for summary judgment, Pa.R.C.P. No. 1035(b) provides that "[t]he judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law."

The Association argues that summary judgment is appropriate, because the issue presented for this Court's review is purely legal. The Commonwealth opposes entry of summary judgment, because, it alleges, the verifications accompanying the Association's petition for review and answers to interrogatories have not been made on the signer's personal knowledge, and because material facts are in dispute. Our review of the record reveals that the verifications signed by Bruce J. Parker, Esquire, General Counsel for the Association, are sufficient. Additionally, the issue of the Association's standing, which the Commonwealth revisits in its argument that material facts are in dispute, has been previously decided in favor of the Association in *Association I.*

The Commonwealth also argues that this Court should not entertain the motion for summary judgment, because the issue it raises has been previously decided in *Association I.* The Commonwealth contends that the first count of the petition for review, based on the separation of powers, has been retitled as a request for declaratory relief. According to the Commonwealth, the Association "is now attempting to circumvent [this Court's] Order by seeking to have this court issue a declaratory judgment that the Executive Order violates the separation of powers." The Association counters by arguing that the Commonwealth has distorted this Court's earlier decision. This Court, according to the Association, intended to preserve, by its *Association I* decision, the issues raised by the motion for summary judgment. In support of its argument, the Association quotes our earlier decision. "Because the Association's claim is premised on a constitutional violation and because that claim alleges both that the substance of the order violates the legislated regulatory scheme and that the Governor was without either constitutional or statutory authority to issue an order effectively altering that scheme, we must find that an action for declaratory judgment is the

appropriate procedure by which to resolve the instant matter." *Association I*, 135 Pa.Commonwealth Ct. at 143–44, 580 A.2d at 898. With regard to the count for declaratory relief, we said, in *Association I*, that "the Association has pled facts sufficient to withstand the demurrer that the Governor did not have the power to take all or certain parts of the actions contained in the executive order. We will, therefore, overrule the Governor and [DER's] demurrer as to this count." *Id.*, 135 Pa.Commonwealth Ct. at 147, 580 A.2d at 900. Because our order sustaining the demurrer as to Count 1 was based on procedural, rather than substantive grounds, we agree with the Association that we have not yet decided whether the Governor had the authority to issue Executive Order 1989–8.

The Association argues, in support of its motion for summary judgment, that the Governor had no authority to issue Executive Order 1989–8. According to the Association, neither the Pennsylvania Constitution nor Acts 97 or 101 give the Governor the authority to have issued such an executive order. Quoting *Shapp v. Butera*, 22 Pa.Commonwealth Ct. 229, 348 A.2d 910 (1975), the Association states that an executive order may not "be contrary to any constitutional or statutory provision, nor [sic] may it reverse, countermand, interfere with, or be contrary to any final decision or order of any court. The Governor's power is to execute the laws and not to create or interpret them." *Id.*, 22 Pa.Commonwealth Ct. at 235–36, 348 A.2d at 914. Further, "[w]hen the General Assembly [has] failed to include [an] essential requirement in its enactment neither the executive nor the judiciary may under the guise of interpretation or public policy apply it." *Ellison v. Safeguard Mutual Insurance Company*, 209 Pa.Superior Ct. 492, 496–97, 229 A.2d 482, 484 (1967).

Distilled to its most succinct form, the Association argues that Executive Order 1989–8 goes well beyond any rule making powers of the Executive Branch and exceeds any grant of regulatory powers contained in the statute. The Association argues the Executive Order is legislation, enacted solely by the Governor and, as such, is little more than

legislation through gubernatorial fiat and, therefore, in conflict with the Commonwealth's constitutional scheme of government.

Article II, Section 1 of the Pennsylvania Constitution states that "[t]he legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives."

Article IV, Section 15 requires that every bill which has passed both Houses be approved and signed by the Governor, prior to becoming law, but that if the Governor disapproves, the bill must be passed by a two-thirds majority in each House in order for it to become law.

This system of bicameral legislation with executive approval is the bulwark of our constitutional existence. It is the system of "checks and balances" which is taught to every school child in the Commonwealth and is perhaps the most fundamental tenet of our constitutional existence.

In discussing this critical aspect of our constitutional existence, our Supreme Court has noted that:

[t]he 'legislative power' in its most pristine form is the power 'to make, alter and repeal laws.' *In Re Marshall,* 363 Pa. 326, 337, 69 A.2d 619 (1950); *Mt. Lebanon v. County Board of Elections,* 470 Pa. 317, 368 A.2d 648 (1977). It is *axiomatic* that the Legislature cannot constitutionally delegate the power to make law to any other branch of government or to any other body or authority. *Gilligan v. Pennsylvania Horse Racing Commission,* 492 Pa. 92, 95, 422 A.2d 487 (1980), citing *State Board of Chiropractic Examiners v. Life Fellowship of Pennsylvania,* 441 Pa. 293, 293, 297, 272 A.2d 478, 480 (1971); *Archbishop O'Hara's Appeal,* 389 Pa. 35, 131 A.2d 587 (1957). The legislature may, consistent with this constitutional axiom, delegate authority and discretion in connection with the execution and administration of a law; it may establish primary standards and impose upon others the duty to carry out the declared legislative policy in accordance with the general provisions of the enabling legislation. *Belovsky v. Redevelopment Authority,* 357

Pa. 329, 342, 54 A.2d 277, 284 (1947); *Chartiers Valley Joint Schools v. Allegheny County Board of School Directors*, 418 Pa. 520, 529, 211 A.2d 487 (1965).

While the General Assembly may, with adequate standards and guidelines, constitutionally delegate the power and authority to execute or administer a law, the prohibition against delegation of 'legislative power' requires that the *basic policy choices* be made by the General Assembly. *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 212, 346 A.2d 269 (1975) (Opinion Announcing the Judgment of the Court); *Tosto v. Pennsylvania Nursing Home Loan Agency*, 460 Pa. 1, 11, 331 A.2d 198, 202 (1975).

*Blackwell v. State Ethics Commission*, 523 Pa. 347, 359–60, 567 A.2d 630, 636–37 (1989), *reh'g granted*, 524 Pa. 403, 573 A.2d 536 (1990), *aff'd*, 527 Pa. 172, 589 A.2d 1094 (1991) (emphasis in original).

■ The Association argues that Executive Order 1989–8 conflicts with both Act 97 and Act 101. For instance, Section 1 of Executive Order 1989–8 directs DER to immediately cease reviewing applications or issuing new permits for municipal waste landfills and resource recovery facilities unless certain specific requirements are met. Section 512 of Act 101, however, requires DER to determine if a permit application is administratively complete within sixty days of its receipt of that application and requires that DER issue the permit within nine months (for a landfill) or six months (for a resource recovery facility) of the date that it determines that the application is administratively complete. 53 P.S. § 4000.512. Additionally, Section 2 of Executive Order 1989–8 sets a standard for determining maximum and average waste volume limits for existing landfills. It requires that those limits be based on actual daily volume disposed at the landfill during the period of October 26, 1988 through June 30, 1989. Section 1112 of Act 101, however, sets the criteria for establishing maximum and average volumes for all landfill permits. 53 P.S. § 4000.1112. Finally, Section 3 of Executive Order 1989–8 addresses the development of a

Pennsylvania Municipal Waste Management Plan (Plan) pursuant to Executive Order 1989–8 and Section 104(3) of Act 97, 35 P.S. § 6018.104(3). DER is required to develop the Plan by September 26, 1991, a requirement which does not appear in Acts 97 or 101. Executive Order 1989–8 also requires DER to include certain information in the Plan and requires the Plan to cover a ten year period, none of which is required by Acts 97 or 101. For instance, Executive Order 1989–8 requires that the Plan "assess the annual impact of demographic changes and municipal waste recycling, beneficial use and waste reduction on the need for processing and disposal capacity for municipal waste generated in each region of the Commonwealth...." This is not required by Acts 97 or 101. Executive Order 1989–8 further requires that the Plan "designate and implement a waste management hierarchy for each type of material in the municipal waste stream" and sets forth a "preference order in the hierarchy [which] shall be waste reduction, then reuse, recycling, beneficial use and energy recovery in lieu of incineration or disposal of waste." Neither Act 97 nor Act 101 imposes such a requirement.

■ The Commonwealth argues that the Governor had the authority to issue Executive Order 1989–8 pursuant to Article I, Section 27 of the Pennsylvania Constitution which states:

> The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

The Commonwealth argues further that Executive Order 1989–8 "is a statement of policy, coupled with directions to the executive agency to carry out the Governor's policy in the course of its regular statutory duties of permitting municipal waste landfill facilities." According to the Commonwealth, Executive Order 1989–8 "merely establishes a

policy to be used to guide the executive agency's decision-making authority in the performance of its statutory duties."

We cannot agree with the Commonwealth. Our review of Acts 97 and 101 and the regulations promulgated pursuant thereto, indicate the General Assembly's "clear intent to regulate in plenary fashion every aspect of the [disposal of solid waste]." *Cloonan v. Thornburgh,* 103 Pa.Commonwealth Ct. 1, 16, 519 A.2d 1040, 1048 (1986), *appeal dismissed,* 516 Pa. 52, 531 A.2d 1391 (1987), quoting *Commonwealth v. Wilsbach Distributors, Inc.,* 513 Pa. 215, 220, 519 A.2d 397, 400 (1986). Executive Order 1989–8 clearly conflicts with those acts and regulations, none of which provide the Governor with the authority to have issued such an executive order. As stated in *Shapp v. Butera,* 22 Pa.Commonwealth Ct. 229, 348 A.2d 910 (1975), "[t]he Governor's power is to execute the laws and not to create or interpret them." *Id.,* 22 Pa.Commonwealth Ct. at 235–36, 348 A.2d at 914. Additionally, we find no authority for Executive Order 1989–8 in Article I, Section 27 of the Pennsylvania Constitution, quoted previously. The balancing of environmental and societal concerns, which the Commonwealth argues is mandated by Article I, Section 27, was achieved through the legislative process which enacted Acts 97 and 101 and which promulgated the applicable regulations. Article I, Section 27 does not give the Governor the authority to disturb that legislative scheme. Neither does it give him the authority to alter DER's responsibilities pursuant to that scheme. *Community College of Delaware County v. Fox,* 20 Pa.Commonwealth Ct. 335, 342 A.2d 468 (1975).

Accordingly, the National Solid Wastes Management Association's motion for summary judgment is granted, and we declare that Executive Order 1989–8 is invalid and is unenforceable, because the Governor had neither constitutional nor statutory authority to issue that executive order. The motion to strike certain portions of petitioner's memorandum of law filed by Robert P. Casey and the Department of Environmental Resources is denied.

## ORDER

AND NOW, this 25th day of November, 1991, Petitioner's motion for summary judgment is granted, and Executive Order 1989–8 is declared invalid and unenforceable. Respondents' motion to strike certain portions of petitioner's memorandum of law is denied.

PELLEGRINI, J., concurs in the result only.