**LAUREL LAKE ASSOCIATION, INC., Petitioner,**

v.

**PENNSYLVANIA FISH AND BOAT COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 9, 1997.

Decided April 3, 1998.

Paul L. Zeigler, Camp Hill, for petitioner.

Laurie E. Shepler, Harrisburg, for respondent.

Before DOYLE and LEADBETTER, JJ., and RODGERS, Senior Judge.

DOYLE, Judge.

This case involves a petition for review filed by the Laurel Lake Association, Inc. (Association) with respect to the promulgation by the Pennsylvania Fish and Boat Commission (Commission) of a regulation which, *inter alia*, restricted the use of boats on Laurel Lake, Susquehanna County, to those with motors not in excess of 60 horsepower. The Commission, as the Respondent, requests that this Court quash the appeal and dismiss the Association's petition for review because its action in promulgating a regulation does not constitute an appealable adjudication or determination by an administrative agency.

This case originated on August 11, 1991, when the "Friends of Laurel Lake" Committee (Friends), a predecessor organization of the Association, wrote to the Commission requesting that the Commission restrict boat operation on Laurel Lake to boats with outboard motors not exceeding 10 horsepower. At the time, the Commission had not promulgated any specific regulations pertaining exclusively to Laurel Lake, and thus the lake was at that time subject to state-wide boating regulations.

The Commission's Boating Advisory Board (BAB) [1] first considered the Friend's request

---

1. Pursuant to Section 306 of the Fish and Boat Code, 30 Pa.C.S. § 306, the BAB is comprised of

the Secretary of Environmental resources, or his designee, the executive director of the Commis-

for regulations at its meeting on March 2, 1992, and voted to table further discussion on the subject until a BAB meeting could be scheduled in the vicinity of the lake. BAB again considered the Friend's request at its June 13, 1992 meeting and, after weighing differing opinions and options, voted to recommend to the Commission that it consider promulgating a regulation that would: (1) prohibit the operation of boats with motors greater than 35 horsepower after January 1, 1995; (2) allow no more than one water ski device with a maximum of one water skier to be towed by any one boat; (3) limit the speed of boats on the lake to slow minimum height swell speed at all times on the lower lake and from sunset to sunrise on the upper lake; and (4) prohibit water-skiing before noon on Saturdays, Sundays and holidays.

At a meeting held on July 11, 1992, the Commission considered the proposed special regulations for Laurel Lake for the first time. After considerable debate, the Commission ultimately voted to approve the publication of a notice of proposed rulemaking, seeking public comment on a regulation that prohibited the operation of boats with greater than 10 horsepower after January 1, 1994. Except for this modification of BAB's proposal, the Commission adopted the recommendations of BAB in all other respects.

A notice of proposed rulemaking was published in the *Pennsylvania Bulletin* on October 10, 1992, and the Commission considered the matter on final rulemaking at its November 9, 1992 meeting. After lengthy discussion on the issue, and recognizing that those using Laurel Lake were still divided over the issue,[2] the Commission strongly encouraged the interested boat owners and homeowners to work together and devise a joint recommendation for regulatory action. The Commission then voted to defer consideration of final rulemaking until its January 1993 meeting and requested all parties to file a report

of their progress by no later than January 6, 1993.

At a meeting held on January 23, 1993, the Commission considered the regulation for final adoption, and ultimately voted to adopt a regulation which prohibited the operation of boats with motors in excess of 60 horsepower after January 1, 1994, and which provided that no more than one water ski device with a maximum of one skier may be towed by a boat. The Commission also directed its staff, in conjunction with the BAB, to review the horsepower limits and report to the Commission during the October 1993 meeting.

At the Commission's meeting, held on October 4, 1993, the BAB discussed the regulations at Laurel Lake and recommended that the regulation imposing a 60–horsepower limit remain in place for another year, as opposed to decreasing it per the Association's request. Thereafter, on November 20, 1994, the Association presented to the Commission a petition to reconsider the 60–horsepower restrictions on Laurel Lake and to prohibit the use of boats with motors in excess of 10 horsepower. The Association cited the size of the lake, more stringent restrictions on lakes of similar size, environmental concerns over the use of gasoline motors, the lack of enforcement by the Commission of the current restrictions, and interference with other uses of the lake caused by high speed operation of motorboats as valid reasons for the reconsideration.

Between May 1, 1995, and July 19, 1996, further discussions and deliberations took place among the members of the Commission and the BAB. At its meeting on July 19, 1996, the BAB considered the proposed regulation and recommended to the Commission that the regulation be amended to restrict the operation of boats with motors greater than 10 horsepower, with a "grandfather" provision to cover existing boat owners who used the lake. The BAB also recommended

sion, and the assistant executive director of the Commission in charge of watercraft safety, all of whom are *ex officio* members, and five volunteer members who are appointed by the Governor for terms of five years. The powers and duties of the BAB include advising the Commission on all matters relating to boating and making recommendations to the Commission with regard to

any proposed rules or regulations affecting the equipment or operation of boats.

2. The Laurel Lake Community also has an organization known as the Cottager's Association, which is comprised of boat owners.

that, through December 31, 2001, resident property owners should be permitted to continue using boats powered by motors greater than 10 horsepower that they owned and used on Laurel Lake prior to January 1, 1996.

At its meeting held on January 25, 1997, the Commission adopted the final version of the regulation and ultimately promulgated 58 Pa.Code § 111.58(d), which was published in the *Pennsylvania Bulletin* on April 19, 1997, and the current version of which provides as follows:

(d) *Laurel Lake*

(1) *Internal combustion motors prohibited.* After April 1, 1997, the operation of boats powered by internal combustion motors is prohibited except as otherwise provided in this subsection.

(2) *Operation of boats powered by motors of up to 60 horsepower.* Resident property owners at Laurel Lake are permitted to operate boats powered by motors of up to 60 horsepower. It is unlawful for a person, other than a resident property owner or a member of the property owner's immediate family, to operate a boat powered by an internal combustion motor on Laurel Lake. It is unlawful for a person, including a resident property owner and members of the immediate family, to operate a boat powered by a motor rated in excess of 60 horsepower.

(3) *Restrictions on operation of boats powered by internal combustion motors.* Operation of boats powered by internal combustion motors is subject to the following restrictions:

(i) *Ski devices.* No more than one water ski device with a maximum of one skier may be towed by a boat.

(ii) *Upper Lake.* Boat speed is limited to slow, minimum height swell speed except that, during the period from noon until 6 p.m., no more than two boats powered by internal combustion motors may, at any one time, operate at speeds greater than slow, minimum height swell speed in the marked boat operating zone. Boats operating in the marked zone shall circle in a counter-clockwise direction and shall be subject to the restrictions in this subsection and the code and this subpart. It is unlawful to water ski or to operate a boat at greater than slow, minimum height swell speed at any location on the upper lake from 6 p.m. until noon of the following day.

(iii) *Lower Lake.* It is unlawful to water ski or to operate a boat at greater than slow, minimum height swell speed at any time at any location on the lower lake.

(iv) *Personal watercraft.* The operation of personal watercraft is prohibited.

58 Pa.Code § 111.58(d)(1)–(3).

On February 24, 1997, the Association filed a petition for review in this Court's appellate jurisdiction, seeking review of the Commission's promulgation of this regulation. Thereafter, on March 25, 1997, the Commission filed a motion to dismiss the Association's petition for review, and the Association filed a memorandum of law in opposition to this motion on April 25, 1997. By order dated April 28, 1997, this Court directed argument on the motion to dismiss along with the merits of the Association's petition for review.

The substance of the Association's appeal pertains to the Commission's failure to restrict the use of boats with motors in excess of 10 horsepower on Laurel Lake. It should initially be noted, however, that the Association's petition for review purports to invoke this Court's appellate jurisdiction, and states in pertinent part as follows:

Petitioner, Laurel Lake Association, Inc. ("Laurel"), by and through its counsel, . . . files this Petition for Review of the decision of the Pennsylvania Fish and Boat Commission dated [January] 25, 1997, and in support of this Petition states the following:

1. This Court has jurisdiction [over] this matter pursuant to Section 763(a)(1) of the Judicial Code, 42 Pa.C.S. § 763(a)(1), and Section 702 of the Administrative Agency Law, 2 Pa.C.S. § 702.

(Petition for Review at 1; Reproduced Record (R.R.) at 1a.)

Section 702 of the Administrative Agency Law, 2 Pa.C.S. § 702, provides in pertinent part as follows:

Any person aggrieved by an adjudication of a Commonwealth agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure).

2 Pa.C.S. § 702. The term "adjudication" is defined in Section 101 of the Administrative Agency Law as follows:

Any final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made.... .

2 Pa.C.S. § 101. Also, Section 763 of the Judicial Code, 42 Pa.C.S. § 763, provides that, with certain enumerated exceptions, this Court has exclusive jurisdiction of appeals from "final orders" of government agencies.[3]

In support of its motion to dismiss, the Commission's principal contention is that its action in promulgating 58 Pa.Code § 111.58(d) is not tantamount to an appealable adjudication or "final order" by an administrative agency.

In *Insurance Co. of North America v. Insurance Department,* 15 Pa.Cmwlth. 462, 327 A.2d 411 (1974), and in the companion case of *Insurance Co. of North America v. Insurance Department,* 15 Pa.Cmwlth. 460, 327 A.2d 414 (1974), we quashed two appeals which had been filed with respect to regulations promulgated by the Pennsylvania Insurance Department, stating as follows:

[The appellant] contends that the promulgation of the instant regulations is a

"determination" or "ruling" by the Insurance Department which affects its property rights and obligations, and is therefore an appealable "adjudication." It is clear, however, that the "determination" or "ruling" referred to in Section [101 of the Administrative Agency Law] speaks of administrative action which is quasi-judicial in nature, and which determines only the personal or property rights or obligations of the parties before an agency in a particular proceeding. Contrasted with this is the quasi-legislative function an administrative agency performs in promulgating rules or regulations of *general application* to persons throughout the Commonwealth, and the exercise of which, in the absence of a specific statute vesting jurisdiction in a particular court, is not appealable....

This functional dichotomy is recognized by the definition of "regulation" contained in Section 2(e) of the Administrative Agency Law ..., which provides that: " 'Regulation' means any rule, regulation or order in the nature of a rule or regulation, of general application and future effect, promulgated by an agency under statutory authority in the administration of any statute administered by or relating to the agency, or prescribing the practice or procedure before such agency." [4] **No right of appeal is provided under the Administrative Agency Law from the mere promulgation of a regulation.** Given the admitted general applicability and future effect of the instant regulations, it is clear that both fall within the definition of "regulation" under Section 2(e), and accordingly no right of appeal to this Court lies under Section [702] of the Administrative Agency Law at this time. As our prior discussion has indicated, the promulgation of the instant regulations and the administrative

---

**3.** Section 763 of the Judicial Code provides in pertinent part as follows:

(A) **General Rule.**—Except as provided in subsection (c), the Commonwealth Court shall have exclusive jurisdiction of appeals from final orders of government agencies in the following cases:

(1) All appeals from Commonwealth agencies under Subchapter A of Chapter 7 of Title 2 (relating to judicial review of Commonwealth agency action) or otherwise and including appeals from the Environmental Hearing Board,

the Pennsylvania Public Utility Commission, the Unemployment Compensation Board of Review and from any other Commonwealth agency having Statewide jurisdiction.

42 Pa.C.S. § 763(a).

**4.** This section of the Administrative Agency Law was repealed in 1978 by the Act of April 28, 1978, P.L. 202, No. 53, and was replaced by Sections 101 and 103 of the Administrative Agency Law.

dismissal of INA's objections thereto are not acts of a judicial character, and therefore no appeal lies therefrom.

*Insurance Co. of North America*, 327 A.2d at 413–14 (second emphasis added) (citations omitted) (footnotes omitted);[5] *see also Popowsky v. Pennsylvania Public Utility Commission*, 701 A.2d 277 (Pa.Cmwlth.1997); *Concerned Citizens of Chestnuthill Township v. Department of Environmental Resources*, 158 Pa.Cmwlth. 248, 632 A.2d 1 (1993) (holding that, because the Environmental Quality Board is a quasi-legislative and policy-making body, its order upgrading the water quality standard of a creek was not an "adjudication" from an administrative agency from which an appeal may be taken to this Court).[6]

Consequently, we must conclude that the actions of the Commission in adopting and promulgating 58 Pa.Code § 111.58(d) did not constitute an appealable adjudication or determination under Section 702 of the Administrative Agency Law and, thus, is not a proper subject of this Court's appellate jurisdiction pursuant to Section 763 of the Judicial Code.

The Association contends that, because the regulation was initially prompted by a "peti-

tion" submitted by Association members, and because the Association also submitted to the Commission a document, styled a "Petition to ... Reconsider the 60 HP Motor Restriction on Laurel Lake," the Commission's refusal to strictly incorporate the requests of the Association into the regulation ultimately promulgated at 58 Pa.Code § 111.58(d) conferred upon the Commission's actions the character of an appealable adjudication or determination. However, we must reject this argument. The fact that the Commission's actions were prompted by Association members and that the Commission solicited and considered comments from all interested parties in formulating the regulation does not alter the fact that the promulgation of the regulation at 58 Pa.Code § 111.58(d) constitutes an *unappealable* legislative act by an administrative agency.[7]

For the foregoing reasons, the Association's appeal from the Commission's adoption and promulgation of 58 Pa.Code. § 111.58(d) must be quashed, and, accordingly, its petition for review is hereby dismissed.[8]

### ORDER

**NOW**, April 3, 1998, upon consideration of the motion to dismiss filed by the Pennsylva-

---

5. The definition of "regulation" cited by this Court in *Insurance Co. of North America* has since been repealed, and thus whether a particular regulation is one of "general application" is not dispositive of whether the promulgation of that regulation by an administrative agency is an appealable event. We note, however, that, although the regulations promulgated by the Commission in the instant case relate to a specific *subject matter, i.e.,* the permitted uses of Laurel Lake, the regulation is essentially one of *general application* attendant to a specific location, and, as a whole, applies with equal force to all persons throughout the Commonwealth by prohibiting specifically enumerated activities on the lake. In particular, the disputed part of the regulation prohibits **anyone** from operating a boat on the lake with a motor in excess of 60 horsepower.

6. Additionally, in *United States Steel Corp. v. Department of Environmental Resources*, 65 Pa. Cmwlth. 103, 442 A.2d 7 (1982), we affirmed an order of the Environmental Hearing Board which quashed the appeal of U.S. Steel Corp. on the basis that it had no jurisdiction to review an action of the Environmental Quality Board because "the promulgation of regulations by an administrative agency is not an appealable event." *Id.*, 442 A.2d at 8.

7. In support of its position that the Commission's actions constituted an appealable order, the Association cites the following language from the minutes of the Commission's January 25, 1997 meeting:

> No matter how the Commission decides to dispose of the pending rulemaking on Laurel Lake, it should be noted that this final rulemaking represents the final agency action on the petition for regulations filed by the [Association].

(R.R. at 125a.) However, we cannot lend to the phrase "final agency action" the weight or import suggested by the Association. That phrase was clearly meant to convey the notion of **finality** in January of 1997 to a process which began in August of 1991 and the adoption of regulations which divided the community. It does not, as the Association suggests, mean that the members of the Commission believed that they were rendering an "adjudication" as that term is used under the Administrative Agency Law.

8. Because this case is not properly within our jurisdiction, we do not address the Commission's other arguments for dismissing the petition for review, and we may not consider the merits of the Association's attempted appeal.

nia Fish & Boat Commission, and the response of Laurel Lake Association, Inc. thereto, said motion is hereby granted. This appeal is quashed and the petition for review filed in the above-captioned matter is hereby dismissed.