IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph B. O'Neill, Jr.,                           :
                              Petitioner          :
                                                  :
              v.                                  :
                                                  :
Pennsylvania Fish and Boat                        :
Commission,                                       :    No. 550 M.D. 2024
                              Respondent          :    Submitted: September 9, 2025

BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION
BY JUDGE FIZZANO CANNON                          FILED: October 10, 2025


          Petitioner, Joseph B. O'Neill, Jr. (O'Neill), *pro se*, filed a petition for
review and, subsequently, an amended petition for review (Amended Petition for
Review), in this Court's original and appellate jurisdiction.   Respondent,
Pennsylvania Fish and Boat Commission (Commission), has filed preliminary
objections (POs) to the extent O'Neill's claims in the Amended Petition for Review
lie in our original jurisdiction.  The Commission has filed an "Application for Relief
Seeking to Quash Amended Petition for Review: Appeal of final Order of
Government Agency: Request for Declaratory Judg[]ment and Action in
Mandamus" (Application to Quash) to the extent O'Neill's claims in the Amended
Petition for Review lie in our appellate jurisdiction.[1]   After thorough review, we
sustain the POs in part and overrule them in part, grant the Application to Quash,
and dismiss the Amended Petition for Review with prejudice.

---

[1] O'Neill  filed an application for relief asking this Court to strike the Commission's brief
as untimely.  We denied the application to Strike, by order dated May 22, 2025.

## I. Background

The gravamen of O'Neill's Amended Petition for Review is his demand that the Commission enact a regulation through which increased salaries will be paid to Water Conservation Officers and Assistant Regional Supervisors. O'Neill filed the Amended Petition for Review in this Court's dual jurisdiction (1) seeking to appeal the Commission's rejection of O'Neill's "Proposed revised new 58 Pa. Code § 51.14 to be promulgated under 30 Pa.C.S. § 304" (Second O'Neill Letter Petition); (2) seeking, in mandamus, to have this Court compel the Commission to take certain actions related to the Second O'Neill Letter Petition; and (3) alleging violations of Section 709 of the Pennsylvania Sunshine Act (Sunshine Act),[2] 65 Pa.C.S. § 709(c.1), and certain rights under the Pennsylvania Constitution. O'Neill's appellate and original jurisdiction claims all relate to the Commission's treatment of the Second O'Neill Letter Petition.

On June 24, 2024, O'Neill submitted a letter to the Commission titled "Petition for Regulation pursuant to 58 Pa. Code § 58.6" (First O'Neill Letter Petition) seeking the implementation of a regulation requiring that increased salaries be paid to Water Conservation Officers and Assistant Regional Supervisors. Reproduced Record (R.R.) at 2a-6a.[3] On July 8, 2024, Commission staff replied, also by letter (First Commission Response), stating that the First O'Neill Letter Petition conflicted with applicable Commonwealth law, was not acceptable under

---

[2] 65 Pa.C.S. §§ 701-716.

[3] In citing the Reproduced Record, we conform to the numbering format prescribed by Rule 2173 of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 2173, with which O'Neill did not fully comply.

58 Pa. Code § 51.6(b)(2),[4] and was being returned to O'Neill. *See Id.* at 7a. The First Commission Response further indicated that what O'Neill was requesting

---

[4] Section 51.6 of the Commission's regulations provides, in pertinent part:

§ 51.6. Petitions or requests for regulations.

(a) Form. Petitions or requests for regulations addressed to the Commission shall be submitted in the format set forth in 1 Pa. Code § 35.18 (relating to petitions for issuance . . . of regulations).

(b) Initial staff review.

(1) The staff will review every petition for regulations to ensure that:

(i) It is complete as required by 1 Pa. Code § 35.18.

*(ii) The petition requests an action within the authority or jurisdiction of the Commission.*

. . . .

(2) If the staff determines the petition is not acceptable for one of the reasons set forth in paragraph (1), it will return the petition to the petitioner together with a statement of the reason why it is not acceptable.

(c) Oral presentation. A petitioner will be given the opportunity to make a 5-minute oral presentation on a petition that the staff determines is appropriate for further consideration. The oral presentation will be scheduled for the next meeting of the Commission occurring more than 30 days after completion of the initial staff review.

(d) Commission determination. *After the oral presentation, the Commission will determine whether or not to accept the petition for further review.* The Commission may refuse to accept the petition when one or more of the following conditions exist:

. . . .

(3) *The action is not appropriate for rulemaking by the Commission.*

58 Pa. Code § 51.6 (emphasis added).

3

would not typically qualify as a regulation.  *Id.*  The First Commission Response also posited that the Commission already had authority generally under 30 Pa.C.S. § 304[5] to take the requested actions in accordance with the Policemen and Firemen Collective Bargaining Act, commonly known as Act 111.[6]  *Id.*  The First Commission Response stated that the Commission was in negotiations with the Fraternal Order of Police, Conservation Police Officers' Lodge No. 114 (Lodge 114),[7] and shared O'Neill's concerns about compensation.  *Id.*

O'Neill then filed  the Second O'Neill Letter Petition on July 30, 2025. R.R. at 13a-15a.  The Second O'Neill Letter Petition addressed the salaries of Waterway Conservation Officers and Assistant Regional Supervisors in more detail and suggested a salary for both of those positions that the Commission should deem "a fair and decent Step 1 starting annual wage[.]"  *Id.* at 14a.  By letter of September 18, 2024 (Second Commission Response), Commission staff indicated that the Second O'Neill Letter Petition was not acceptable and was being returned to O'Neill. *Id.* at 16a-17a.  Specifically, the Second Commission Response explained that, although the Commission is responsible for hiring Waterways Conservation Officers and fixing their salaries, it does so based on the classification and compensation plans established by the Executive Board pursuant to 30 Pa.C.S. § 304(a).[8]  *Id.*

---

[5] 30 Pa.C.S. § 304 relates to the appointment and setting of compensation for waterways patrolmen and employees.

[6] Act of June 24, 1968, P.L. 237, No. 111, *as amended*, 43 P.S. §§ 217.1-217.12.

[7] Lodge 114 filed an Application to Intervene in the action pursuant to Pennsylvania Rule of Appellate Procedure 1531, Pa.R.A.P. 1531.  This Court denied intervention by Order dated July 21, 2025.

[8] Section 304(a), governing appointments and compensation, provides:

4

On September 30, 2024, O'Neill filed a "Petition for Review and Appeal of Actions of Staff" (Board Appeal) with the Commission's Board of Commissioners (Board) seeking to appeal the Second Commission Response, specifically the Commission staff's statement that the Second O'Neill Letter Petition was "not acceptable." R.R. at 22a-32a. O'Neill asked to have the Second O'Neill Letter Petition placed on the next meeting of the full Board for consideration. *Id.* at 31a. After receiving the Board Appeal, the Commission reached out to O'Neill through its attorney in an October 4, 2024 letter (Appeal Response) indicating that, "to save resources and unnecessary costs related to an appeal," O'Neill would be permitted to give a five-minute oral presentation regarding the Second O'Neill Letter Petition during the Board's October 21, 2024 meeting. *Id.* at 56a. The Appeal Response further indicated that the Second O'Neill Letter Petition would be placed on the Board's agenda "for a vote by the Board of whether or not to accept the [Second O'Neill Letter Petition] for further review as outlined in [58 Pa. Code § ]51.6(d)." *Id.* The Appeal Response referred to an earlier discussion between O'Neill and the Commission's attorney and reminded O'Neill to "file the signed statement stating that [his] complaint ha[d] been satisfied and requesting dismissal in accordance with 1 Pa. Code § 35.41."[9] *Id.* O'Neill responded with a letter headed

> The executive director, with the approval of the [C]ommission, shall, in accordance with law and the classification and compensation plans of the Commonwealth as established by the Executive Board, appoint and fix the compensation of such number of waterways patrolmen and other employees as the commission deems necessary to enforce and carry out the provisions of this title and perform the functions and work of the [C]ommission.

30 Pa.C.S. § 304(a).

[9] Section 35.41, governing satisfaction of complaints, provides: "If the respondent satisfies a formal complaint either before or after answering, a statement to that effect signed by the

5

"Re: Satisfaction of Complaint / Appeal of Determinations of Staff" (Board Appeal Dismissal Request) in which O'Neill indicated that, in light of the Commission's stated willingness to proceed regarding the Second O'Neill Letter Petition "in accordance with 58 Pa. Code § 51.6 and 1 Pa. Code § 35.18," O'Neill was requesting dismissal of his Board Appeal without prejudice. R.R. at 57a. In essence, the Commission was agreeing to treat the Second O'Neill Letter Petition as though staff had forwarded it to the Commission for an oral presentation, following which the Board would determine whether or not to accept the Second O'Neill Letter Petition for further review. *See* 58 Pa. Code § 51.6(b)-(d).

At the Commission meeting on October 21, 2024, the Board members voted in favor of granting the Board Appeal Dismissal Request and allowed O'Neill to give his presentation concerning the Second O'Neill Letter Petition. Certified Record (C.R.) at 191-98 (Notes of Transcript, 10/21/24 Board Meeting). At the conclusion of the presentation, the Board went into an executive session to discuss the matter further. *Id.* at 199-200. When the Board reconvened the public meeting, the Board president asked whether there was a motion to accept the Second O'Neill Letter Petition for further review. When no motion was heard, the president indicated that the motion failed and made the following statement (Board Statement), a portion of which is the subject of the instant Amended Petition for Review:

> [T]he Board . . . support[s] our Waterway Conservation
> Officers and their right to collectively bargain. We
> support fair and equitable compensation for all employees,
> including Waterway Conservation Officers. And we have,

---

opposing parties shall be filed, setting forth when and how the complaint has been satisfied and requesting dismissal." 1 Pa. Code § 35.41.

6

and we will continue to express that position to the Office of Administration.

That being said, the [C]ommission has the authority to create rules and regulations for fishing to aid in the better protection, preservation and management of fish and boating and the management and operation of boats. ***The [C]ommission does not have the authority to create rules and regulations regarding [C]ommonwealth employee compensation.***

*Id.* at 200-01 (emphasis added).

By Notice issued December 3, 2024, this Court recognized the dual nature of O'Neill's Petition for Review.

The appellate aspect of the Amended Petition for Review seeks to appeal the last portion of the Board Statement as a final order. Amended Petition for Review (1/9/2025) ¶¶ 40-41. In our original jurisdiction, O'Neill seeks declaratory and mandamus relief and alleges violations of the Sunshine Act and certain individual rights under the Pennsylvania Constitution.

In Counts 1 through 5, O'Neill alleges that by allowing him to make a five-minute presentation on the Second O'Neill Letter Petition, the Commission was stipulating that the Second O'Neill Letter Petition was appropriate and met all applicable regulatory criteria. O'Neill also avers that the Commission erred in determining that the Second O'Neill Letter Petition conflicted with Commonwealth laws and that the Commission failed to perform a legally required duty when the Board did not vote on the Second O'Neill Letter Petition.

In Count 6, O'Neill alleges that by failing to include copies of the Board Appeal Dismissal Request and the Second O'Neill Letter Petition in the meeting

7

agenda packet and then holding impromptu executive sessions on both, the Commission violated Section 709(c.1) of the Sunshine Act, 65 Pa.C.S. § 709(c.1).[10]

In Counts 7 and 8, O'Neill alleges that the Commission has deprived O'Neill of certain individual rights under the Pennsylvania Constitution. Specifically, O'Neill alleges a deprivation of the right to petition under article I,

---

[10] Section 709(c.1), governing notice of agency business to be considered at a public meeting, provides:

> (1) In addition to any public notice required under this section, an agency shall provide the following notification of agency business to be considered at a meeting as follows:
>
>> (i) If the agency has a publicly accessible Internet website, the agency shall post the agenda, which includes a listing of each matter of agency business that will be or may be the subject of deliberation or official action at the meeting, on the website no later than 24 hours in advance of the time of the convening of the meeting.
>>
>> (ii) The agency shall post the agenda, which includes a listing of each matter of agency business that will be or may be the subject of deliberation or official action at the meeting, at the location of the meeting and at the principal office of the agency.
>>
>> (iii) The agency shall make available to individuals in attendance at the meeting copies of the agenda, which include a listing of each matter of agency business that will be or may be the subject of deliberation or official action at the meeting.
>
> (2) This subsection shall not apply to a conference or a working session under section 707 (relating to exceptions to open meetings) or an executive session under section 708 (relating to executive sessions).

65 Pa.C.S. § 709(c.1).

section 20[11] and the right to "clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment[]" afforded to him by article I, section 27.[12]

## II. Issues

The Commission's POs assert (1) lack of subject matter jurisdiction, (2) lack of standing, (3) failure to state a cognizable claim in mandamus, (4) failure to state a cognizable claim for declaratory judgment, and (5) failure to state a cognizable claim for a violation of the Sunshine Act.

The Commission's Application to Quash asserts that O'Neill cannot seek review of the Commission's failure to entertain the Second O'Neill Letter Petition, because there was no adjudication or final order by the Commission from which to seek review. The Commission also argues that O'Neill is not aggrieved by the Commission's failure to act on the Second O'Neill Letter Petition – an argument similar to the PO asserting lack of standing.

---

[11] Article I, section 20 provides: "The citizens have a right in a peaceable manner to assemble together for their common good, and to apply to those invested with the powers of government for redress of grievances or other proper purposes, by petition, address or remonstrance." Pa. Const. art. I, § 20.

[12] Article I, section 27 provides:

> The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

Pa. Const. art. I, § 27.

O'Neill, in addition to opposing the Commission's POs and the Application to Quash, requests, in his Application to Strike, that this Court strike the Commission's brief as untimely filed.

### III. Discussion
### A. Subject Matter Jurisdiction
### 1. Appellate Jurisdiction

We first address the Commission's challenge to our subject matter jurisdiction. Counts 1 through 5 of the Amended Petition for Review seek appellate review of the Commission's disposition of the Second O'Neill Letter Petition. We agree with the Commission, however, that its mere failure to move forward to consider the Second O'Neill Letter Petition was not an adjudication and did not result in the issuance of a final appealable order.

Section 763(a)(1) of the Judicial Code provides that this Court has jurisdiction over, *inter alia*, direct appeals from final orders of Commonwealth agencies. 42 Pa.C.S. § 763(a)(1). Similarly, to be appealable, an agency's activity must constitute an "adjudication," which is defined by Section 101 of the Administrative Agency Law,[13] 2 Pa.C.S. § 101, as a "final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made." *See Doheny v. Dep't of Transp., Bureau of Driver Licensing*, 171 A.3d 930, 935 n.12 (Pa. Cmwlth. 2017), *aff'd without op.*, 187 A.3d 246 (Pa. 2018) (observing that "[i]t is well-settled that if an

---

[13] 2 Pa.C.S. §§ 101, 501-508 & 701-704.

10

agency action is not an 'adjudication,' then it is not subject to judicial review by way of appeal") (additional quotation marks and citation omitted).

As quoted more fully above, the Commission's applicable regulation provides that where, as here, the Commission receives a petition asserting a request for a regulation, the request is initially reviewed by staff to determine whether, *inter alia*, the petition is complete and requests an action within the Commission's authority or jurisdiction. 58 Pa. Code § 51.6(b)(1). If not, staff will return the request after the initial staff review with a statement of why it is not being accepted for further consideration. 58 Pa. Code § 51.6(b)(2); *see also supra* at 3 n.3 (quoting Section 51.6 in pertinent part). The Commission followed that procedure here. Nothing in the Commission's governing statute or regulations confers a right to a hearing or an adjudication relating to a request for a regulation.

Nevertheless, after O'Neill's submission of the Board Appeal, the Commission elected to expedite the resolution of the matter by allowing O'Neill to provide a five-minute oral presentation on the Second O'Neill Letter Petition. The Commission's regulation provides for such a presentation where the staff determines a petition is appropriate for further consideration. 58 Pa. Code § 51.6(c). Here, the Commission agreed to allow O'Neill to offer an oral presentation despite the staff's initial review and rejection of the Second O'Neill Letter Petition, and O'Neill agreed to withdraw the Board Appeal. In effect, the Commission agreed to treat the Second O'Neill Letter Petition as though staff had forwarded it for an oral presentation. Contrary to O'Neill's position, the Commission was not thereby agreeing to accept the Second O'Neill Letter Petition for further consideration. The Commission agreed *only* to allow an oral presentation under Section 51.6(c) of its regulations.

11

Once an oral presentation has been made, the regulation contemplates a determination by the Commission whether it will accept the petition for further review. 58 Pa. Code § 51.6(d). The Commission may refuse to accept the petition where, *inter alia*, the requested action is not appropriate for rulemaking by the Commission. *Id.* The Commission properly followed that procedure in this case. When O'Neill's request for a regulation was presented, the Board discussed it in executive session, but upon reconvening the public meeting, failed to receive a motion to accept the Second O'Neill Letter Petition for further consideration.

This Court has held that the actions of the Commission in adopting and promulgating a regulation is not an appealable adjudication or determination and, accordingly, is not a proper subject of this Court's appellate jurisdiction. *Laurel Lake Ass'n, Inc. v. Pa. Fish & Boat Comm'n*, 710 A.2d 129, 133 (Pa. Cmwlth. 1998); *see also Ins. Co. of N. Am. v. Ins. Dep't*, 327 A.2d 411, 414 (Pa. Cmwlth. 1974) (stating, under prior law, that "[n]o right of appeal is provided under the Administrative Agency Law from the mere promulgation of a regulation"). The logical corollary to this holding is that the Commission's failure to adopt a regulation likewise cannot constitute an appealable adjudication.

In addition, as set forth above, to be a final order and thereby subject to appeal, an agency's adjudication must "affect[] personal or property rights, privileges, immunities, duties, liabilities or obligations *of any or all of the parties to the proceeding* in which the adjudication is made." 2 Pa.C.S. § 101 (emphasis added). Here, however, the Second O'Neill Letter Petition sought promulgation of a Commission regulation to increase the minimum starting salaries of certain Commission employees. O'Neill, who was the only party before the Commission, is not among those employees, none of whom were parties to the Second O'Neill

Letter Petition. Therefore, the outcome O'Neill sought would not have affected the rights of anyone who was a party. For that additional reason, the Commission's refusal to accept the Second O'Neill Letter Petition for further consideration was not an agency adjudication subject to appellate review by this Court.

Accordingly, there is nothing before this Court that can be subjected to appellate review. We conclude that we lack appellate subject matter jurisdiction regarding the Commission's failure to accept the Second O'Neill Letter Petition for further consideration after O'Neill's oral presentation. This Court lacks appellate subject matter jurisdiction over Counts 1 through 5 of the Amended Petition for Review, all of which relate to the Commission's failure to accept the Second O'Neill Letter Petition. O'Neill's Application to Quash is granted, and his requests for appellate review in Counts 1 through 5 are quashed.

## 2. Original Jurisdiction

The Commission posits that this Court also lacks original subject matter jurisdiction because O'Neill is seeking review of the Commission's failure to accept the Second O'Neill Letter Petition for further consideration after his oral presentation at a Board meeting. We conclude that we have original jurisdiction over the subject matter of the Amended Petition for Review.

Section 761(a)(1) of the Judicial Code[14] provides that "[t]he Commonwealth Court shall have original jurisdiction of all civil actions or proceedings[ a]gainst the Commonwealth government, including any officer thereof, acting in his official capacity. . . ." 42 Pa.C.S. § 761(a)(1). Here, O'Neill seeks declaratory and/or mandamus relief regarding the Commission's alleged duty

---

[14] 42 Pa.C.S. §§ 101-9913.

13

to consider the Amended Petition for Review and to act on it in a public meeting. Both kinds of claims are within this Court's original jurisdiction. *See Commonwealth v. Donahue*, 98 A.3d 1223, 1233 (Pa. 2020) (holding that a declaratory judgment action against a Commonwealth agency is "squarely within the scope of the Commonwealth Court's original jurisdiction"); *Saunders v. Dep't of Corr.*, 749 A.2d 553, 555 (Pa. Cmwlth. 2000) (observing that the Commonwealth Court has original jurisdiction over mandamus actions against administrative agencies). Accordingly, we overrule the Commission's POs challenging this Court's original jurisdiction over O'Neill's claims.

## B. Standing

This Court has explained the requirements for standing as follows:

> Under traditional standing, a party must be aggrieved by the matter he challenges. *W*[*illiam*] *Penn Parking Garage, Inc. v. City of Pittsburgh*, . . . 346 A.2d 269 ([Pa.] 1975) (plurality). To establish aggrievement, a party must show an interest that is substantial, direct and immediate. *Id.* A substantial interest means the party suffers a discernible adverse effect to an interest other than the interest of all citizens in compliance with the law. *Id.* A direct interest means the party shows the matter complained of caused harm to his interest. *Id.* Lastly, relating to the causal connection, the party must show the interest is immediate and not a remote consequence of the matter complained of. *Id.*

*Scarnati v. Dep't of Env't Prot.*, 220 A.3d 723, 728 (Pa. Cmwlth. 2019), *aff'd*, 240 A.3d 536 (Pa. 2020), *abrogated in part on other grounds by In re Nomination Petition of deYoung*, 903 A.2d 1164, 1168 n.5 (Pa. 2006).

14

O'Neill is not an employee of the Commission, but a volunteer.[15]  He asserts no interest as to which the Commission's failure to enact the requested regulation would create "a discernible adverse effect . . . other than the interest of all citizens . . . ." *Scarnati*, 220 A.3d at 728.  Moreover, he fails to aver facts indicating an immediate causal connection, rather than a remote relationship, between allegedly inadequate salaries and the Commission's allegedly insufficient personnel for effective enforcement of its regulations.  We conclude, therefore, that O'Neill has failed to plead facts to establish that he has standing to pursue his claims against the Commission.

## C. Demurrer – Salary Regulations

Section 322 of the Commission's governing statute, the Fish and Boat Code,[16] provides generally that "[t]he [C]ommission may promulgate rules and regulations concerning:  (1) Fishing to aid in the better protection, preservation and management of fish [and] (2) Boating and the management and operation of boats."  30 Pa.C.S. § 322.  More specifically, Section 2102 authorizes the Commission to enact various regulations for the protection, preservation, and management of fish and fish habitat, including, *inter alia*, fishing seasons, fish sizes, transport and sale of fish, creel sizes, and traps, seines, and other devices for catching fish.  30 Pa.C.S. § 2102.

---

[15] Section 327(d)(1) & (4) of the Fish and Boat Code provides that volunteers are not employees of the Commonwealth and "shall not be assigned to any full-time or wage position that is covered by any labor agreement, presently filled, vacant or authorized in the [C]ommission."  30 Pa.C.S. § 327(d)(1) & (4).

[16] 30 Pa.C.S. §§ 101-7314.

Section 302(a) of the Fish and Boat Code authorizes the Commission, with the approval of the Governor, to set the compensation of the Commission's Executive Director. 30 Pa.C.S. § 302(a). Section 304(a) authorizes the Commission's Executive Director, with the approval of the Commission, to set employee compensation "in accordance with law and the classification and compensation plans of the Commonwealth . . . ." 30 Pa.C.S. § 304(a).

However, nothing in any of these statutory provisions authorizes the Commission to set the minimum starting salary of its employees by regulation. To the contrary, the Commission's employee salaries are governed by a collective bargaining agreement, the current version of which is effective through June 30, 2028.[17] Thus, we agree with the Commission that it lacks authority to consider the Second O'Neill Letter Petition.

### D. Demurrer – Sunshine Act

O'Neill contends that the Commission violated Section 709(c)(1) of the Sunshine Act by failing to include copies of the Board Appeal Dismissal Request and the Second O'Neill Letter Petition in the meeting agenda packet and then holding impromptu executive sessions on both. We agree with the Commission that this count of the Amended Petition for Review fails to set forth a claim on which relief can be granted.

As quoted at length above, Section 709(c)(1) sets forth the public notice requirements for agency meetings. *See* 65 Pa.C.S. § 709(c)(1). Nothing in that section relates to copies of written materials other than providing meeting attendees

---

[17] The Commission's current collective bargaining agreement can be accessed online at https://www.pa.gov/content/dam/copapwp-pagov/en/hrmoa/documents/employee-relations/cba-md/documents/cba-fop-fish-boat-2024-2028.pdf (last visited October 9, 2025).

16

with copies of the meeting agenda. Moreover, O'Neill fails to acknowledge that Section 709(c)(2) expressly excepts executive sessions from the notice requirements of Section 709(c)(1). *See* 65 Pa.C.S. § 709(c)(2). O'Neill does not assert that the executive session was not held regarding permissible subject matter or that any decision was improperly made during the executive session. *See generally* 65 Pa.C.S. § 708 (governing executive sessions). Accordingly, O'Neill has failed to plead any violation of the Sunshine Act.

### E. Demurrer – Constitutional Claims

Article I, section 20 confers a right upon citizens to petition government for proper purposes. Pa. Const. art. I, § 20. However, nothing in article I, section 20 confers a right to an adjudication where a citizen petitions a government agency asking that agency to exercise its legislative power in a specific manner. Here, O'Neill wants the Commission to give further consideration to his request for a Commission regulation that would increase the minimum starting salary for certain Commission employees. However, O'Neill does not cite any pertinent authority conferring on him a right to formal consideration, much less a final adjudication, under article I, section 20.

Article I, section 27 of the Pennsylvania Constitution, commonly known as the Environmental Rights Amendment (ERA), declares the right of Pennsylvanians to clean air and water and to the preservation of the natural, scenic, historic, and aesthetic resources. Pa. Const. art. I, § 27. This provision makes the Commonwealth the trustee tasked with the protection and preservation of these resources. *Id.* This Court has explained, however:

> Because it is the Commonwealth, not individual agencies
> or departments, that is the trustee of public natural

17

resources under the ERA, and the Commonwealth is bound to perform a host of duties beyond implementation of the ERA, the ERA must be understood in the context of the structure of government and principles of separation of powers. In most instances, the balance between environmental and other societal concerns is primarily struck by the General Assembly, as the elected representatives of the people, through legislative action. *See Nat'l Solid Wastes Mgmt. Ass'n v. Casey*, . . . 600 A.2d 260, 265 ([Pa. Cmwlth.] 1991), *aff'd*, . . . 619 A.2d 1063 ([Pa.] 1993) (holding that the Governor can only execute laws and the balance required by the ERA was achieved through legislative enactments). While executive branch agencies and departments are, from time to time, put in the position of striking the balance themselves, they do so only after the General Assembly makes "basic policy choices" and imposes upon the agencies or departments "the duty to carry out the declared legislative policy in accordance with the general provisions of the statute." *MCT Transp., Inc., v. Phila. Parking Auth.*, 60 A.3d 899, 904 (Pa. Cmwlth.), *aff'd sub nom. MCT Transp., Inc. v. Phila. Parking Auth.*, . . . 81 A.3d 813, and *aff'd sub nom. MCT Transp., Inc. v. Phila. Parking Auth.*, . . . 83 A.3d 85 ([Pa.] 2013) (quotation omitted).

*Funk v. Wolf*, 144 A.3d 228, 235 (Pa. Cmwlth. 2016), *aff'd*, 158 A.3d 642 (Pa. 2017). Stated otherwise, the ERA does not speak in absolute terms, either regarding the duty imposed on the Commonwealth as trustee or regarding an individual citizen's right to relief. *Id.* The General Assembly must balance the interests to be protected under the ERA with all the other interests of Pennsylvania's citizens. *Id.*

Here, O'Neill fails to point to any constitutional, statutory, or regulatory provision that would empower him to compel the Commission to undertake the enactment of a regulation raising employee salaries with the indirect goal of complying with the ERA. Accordingly, we sustain the Commission's demurrer to O'Neill's constitutional claims.

## IV. Conclusion

Based on the foregoing discussion, we sustain the Commission's PO asserting lack of subject matter jurisdiction for claims asserted in this Court's appellate jurisdiction as to Counts 1 through 5. We overrule the Commission's PO asserting lack of original jurisdiction. We sustain the Commission's POs in the form of demurrers. We grant the Commission's application for relief seeking quashal of O'Neill's claims asserted in this Court's appellate jurisdiction. We dismiss O'Neill's Amended Petition for Review with prejudice.

_____
CHRISTINE FIZZANO CANNON, Judge

19

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph B. O'Neill, Jr.,　　　　　　　　　:
　　　　　　　　Petitioner　　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　　v.　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
Pennsylvania Fish and Boat　　　　　:
Commission,　　　　　　　　　　　:　　No. 550 M.D. 2024
　　　　　　　　Respondent　　　　:

## **O R D E R**

AND NOW, this 10th day of October, 2025, the preliminary objection (PO) of Respondent, Pennsylvania Fish and Boat Commission (Commission) asserting lack of subject matter jurisdiction over the Amended Petition for Review by Petitioner, Joseph B. O'Neill, Jr. (O'Neill) regarding claims asserted in this Court's appellate jurisdiction are SUSTAINED as to Counts 1 through 5. The Commission's PO asserting lack of original jurisdiction is OVERRULED. The Commission's POs in the form of demurrers to O'Neill's statutory and constitutional claims are SUSTAINED.

The Commission's application for relief seeking quashal of O'Neill's claims asserted in this Court's appellate jurisdiction is GRANTED.

O'Neill's Amended Petition for Review is DISMISSED with prejudice.

　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　CHRISTINE FIZZANO CANNON, Judge