James Gilligan et al., Petitioners *v.* Pennsylvania Horse Racing Commission et al., Respondents; Jockeys' Guild, Inc., Intervenor-Respondent.

Argued September 13, 1979, before Judges CRUMLISH, JR., ROGERS and CRAIG, sitting as a panel of three.

*David S. Kohn,* for petitioners.

*Bartholomew J. DeLuca, Jr.,* Deputy Attorney General, with him *David H. Allshouse,* Deputy Attorney General, *Norman J. Watkins,* Deputy Attorney General, Chief, Civil Litigation, and *Edward G. Biester, Jr.,* Attorney General, for respondents.

OPINION BY JUDGE CRUMLISH, JR., October 24, 1979:

On October 19, 1978, the Pennsylvania Horse Racing Commission (Commission), following an advertisement in 8 Pa. B. 2470 (1978), unanimously adopted an amendment to Rule 9.15 of the Rules of Racing in 8 Pa. B. 3342 (1978). Rule 9.15 provides a schedule permitting an increase of riding fees to jockeys by horse owners or trainers. The amendment was proposed to the Commission by the Jockeys' Guild, Inc., an association representing jockeys. They intervened.

The Pennsylvania Division of the Horsemen's Benevolent Protective Association (HBPA), which represents owners-trainers of racing horses at various race tracks in Pennsylvania, together with the president of the Pennsylvania division and two other horse owner-trainers affected by increased jockey fees, have filed

a Petition for Review[1] wherein they challenge the power and authority of the Commission to amend and decree the new schedule.

The Commission, having broad powers prescribed by the legislature in the supervision of all activities conducted at horse race meetings, contends that the amendment to Rule 9.15 was a valid exercise of its rule-making power. In addition, it claims it is authorized to set jockey fees under Section 1 of the Horse Racing Act[2] (Act) which gives the Commission "general jurisdiction over all pari-mutuel thoroughbred horse racing activities in the State and the corporations engaged therein." Legislative authorization to establish and alter jockey fees is found in Section 2(a) of the Act[3] which authorizes the Commission "to supervise generally all thoroughbred horse race meetings in the State at which pari-mutuel betting is conducted."

The rationale of the proposed amendment to Rule 9.15 is, as the Commission advertised, that the present rules relating to prescribed jockey fees fixed in 1968 are not current because of "inflationary pressures and other adverse effects" and "that it would be reasonable and appropriate to increase these fees." In addition to its argument that the Commission lacks the power to set jockey fees, the HBPA alternatively urges that even had the legislature intended to vest some discretion in the Commission, the delegation is invalid because of its failure to provide adequate standards.

---

[1] Petitioners originally came to this Court on January 23, 1979, requesting a preliminary injunction. As a result of pre-hearing negotiations between the parties, a stipulation was entered into whereby the HBPA agreed to pay the difference between the old and new fees into an escrow account pending outcome of this petition for review.

[2] Act of December 11, 1967, P.L. 707, *as amended*, 15 P.S. §2651.

[3] 15 P.S. §2652(a).

The cardinal issue is whether the Commission has the legislative authority to set the fees paid by HBPA members to their jockeys.

It is undisputed that the Commission exercises wide control of many diverse aspects of pari-mutuel thoroughbred horse racing in Pennsylvania from meeting admission fees to regulation of the dispensing of drugs which affect the conduct of the race. However, it is equally uncontroverted that the Act fails to provide express authorization to establish rates of jockey compensation. Absent a specific legislative mandate directing the Commission to establish a jockey fee schedule, we are constrained to conclude that Commission exceeded its authority and cannot dictate the amount of jockey compensation HBPA must honor. It is clear in Pennsylvania that administrative powers must be executed within statutory borders. *In Re: Bentleyville Plaza, Inc.,* 38 Pa. Commonwealth Ct. 235, 392 A.2d 899 (1978). We do not doubt that Commission in good faith attempted to increase jockey fees in the best interests of the sport. Nevertheless, without specific statutory authorization, it errs. *See George A. Fuller Co. v. City of Pittsburgh,* 15 Pa. Commonwealth Ct. 403, 327 A.2d 191 (1974).

In reviewing the declaration of our sister states on this issue, we are persuaded by the rationale of the Illinois Supreme Court which held in a like contest:

> There is no authority conferred in the language of the Act, and the absence from the statute of any standards, criteria or procedure for determining compensation confirms that no power to make such determinations was intended by the legislature to be given the Board.

*Chicago Division of Horsemen's Benevolent & Protective Ass'n v. Illinois Racing Board,* 53 Ill. 2d 16, 19, 289 N.E. 2d 421, 423 (1972).

In summary, we hold that Rule 9.15 as amended is a nullity being without statutory designated authority. The generalized language of Section 1 of the Act cannot be construed to give specific authority to the Commission to promulgate rules relating to fees paid to jockeys.

Accordingly, we

### ORDER

AND Now, this 24th day of October, 1979, the Respondents' Motion for Judgment on the Pleadings is hereby denied and it is ordered that judgment be entered in favor of Petitioners. The escrow account established on January 23, 1979, is ordered terminated and distributed to each individual HBPA member as contributed. It is so ordered.