422 A.2d 487

James GILLIGAN et al., Appellees

v.

PENNSYLVANIA HORSE RACING COMMISSION et al.,
Appellants in No. 69 May Term, 1979

and

Jockeys' Guild, Inc., Appellant in No. 63 May Term, 1979.

Supreme Court of Pennsylvania.

Argued May 19, 1980.

Decided Sept. 22, 1980.

Reargument Denied Dec. 5, 1980.

Fred Speaker, Harrisburg, for appellant (63).

Bartholomew J. DeLuca, Jr., Deputy Atty. Gen., for appellee Pa. Horse Racing (63).

Bruce E. Cooper, Harrisburg, for appellee Gilligan, et al. (63 and 69).

David H. Allshouse, Bartholomew J. DeLuca, Jr., Deputy Attys. Gen., Allen C. Warshaw, Deputy Atty. Gen., Edward G. Biester, Jr., Atty. Gen., for appellants (69).

Thomas B. Schmidt, III, Harrisburg, for appellee Jockeys' Guild Inc. (69).

OPINION

KAUFFMAN, Justice.

This is an appeal from an order of the Commonwealth Court entering judgment on the pleadings upon review of an administrative ruling by the Pennsylvania Horse Racing Commission ("Commission"). The issue presented is whether the Commission exceeded its legislative authority in promulgating a rule setting fees to be paid to jockeys.

The fee schedule originally was adopted in 1968 and remained unchallenged and unchanged until an increase in fees was requested by the Jockeys' Guild, Inc. ("Guild"), in June, 1978.[1] The Commission unanimously voted to amend the rule containing the fee schedule (Rule 9.15 of the Rules of Racing[2]) on July 19, 1978. Notice of the proposed amendment appeared in the Pennsylvania Bulletin on September 2, 1978, citing inflation as the primary justification for the increase. The amendment was subsequently adopted despite written and oral objections by appellees.[3]

Appellees petitioned for review in the Commonwealth Court, claiming (1) that the Commission lacked authority under the Horse Racing Act ("Act")[4] to regulate jockey fees; (2) that Rule 9.15 interfered with appellees' freedom of contract; and (3) that the Commission's action failed to

1. The Guild is a national organization which represents approximately 1500 jockeys, including the majority of those actively riding in Pennsylvania.

2. Promulgated by the Commission pursuant to the Horse Racing Act. See note 4, *infra*.

3. Appellees are the Pennsylvania Division of the Horsemen's Benevolent Protective Association ("H. B. P. A.") and three individuals. The H. B. P. A. represents owner–trainers of racing horses at various race tracks in Pennsylvania.

4. Act of December 11, 1967, P.L. 707, *as amended*, 15 P.S. § 2651 *et seq.*

satisfy procedural requirements under applicable statutes. Injunctive and other relief was requested.

Upon close of the pleadings, the parties agreed and the Court so ordered that the difference between the amounts of fees collected under the original Rule 9.15 and under the Rule as amended would be held in escrow, and the Jockey's Guild was permitted to intervene as a party respondent. The Commission moved for judgment on the pleadings but the Commonwealth Court, addressing only the first of their contentions, entered judgment in favor of appellees and ruled that the Commission does not have the legislative authority to promulgate Rule 9.15:[5]

> ... [T]he Act fails to provide express authorization to establish rates of jockey compensation. Absent a specific legislative mandate directing the Commission to establish a jockey fee schedule, we are constrained to conclude that Commission exceeded its authority and cannot dictate the amount of jockey compensation HBPA must honor ...
> 46 Pa.Cmwlth. 595, 598, 407 A.2d 466, 468 (1979).

Both the Guild and the Commission appealed.[6] We conclude that the Commission acted well within its broad grant of legislative authority and, for the reasons stated hereinafter, reverse and remand for proceedings consistent with this opinion.

■ It is axiomatic that the Legislature cannot constitutionally delegate the power to make law to any other branch of government or to any other body or authority. *State Board of Chiropractic Examiners v. Life Fellowship of Pennsylvania*, 441 Pa. 293, 297, 272 A.2d 478, 480 (1971). It may,

---

5. Because judgment was entered on the pleadings solely on the issue of the Commission's legislative authority, no factual record was made and the Commonwealth Court found it unnecessary to address the remaining two issues raised by appellees.

6. By stipulation, the appeals were consolidated for briefing and argument. Jurisdiction is vested in this Court pursuant to the Judicial Code, Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S.A. § 724(a).

however, "confer authority and discretion in connection with the execution of the law; it may establish primary standards and impose upon others the duty to carry out the declared legislative policy in accordance with the general provisions of the act." *Belovsky v. Redevelopment Authority*, 357 Pa. 329, 342, 54 A.2d 277, 284 (1947). The principal limitations on this power are twofold: (1) the basic policy choices must be made by the Legislature, *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 212, 346 A.2d 269, 291 (1975); and (2) the "legislation must contain adequate standards which will guide and restrain the exercise of the delegated administrative functions." *Chartiers Valley Joint School District v. County Board of School Directors*, 418 Pa. 520, 529, 211 A.2d 487, 493 (1965). This does not mean, however, that all details of administration must be precisely or separately enumerated in the statute. *Chartiers, supra*, 418 Pa. at 529, 211 A.2d 487; *see generally Hospital Ass'n of Pennsylvania v. MacLeod*, 487 Pa. 516, 410 A.2d 731 (1980).

█ The Act reflects a clear legislative policy to vest the Commission with broad general supervisory powers over the previously unlawful activity of thoroughbred horse racing.[7] In evaluating the standards implicit in this mandate, we are not unmindful of the admonition in *Pennsylvania Human*

7. In relevant part, the Act provides:
   The State Horse Racing Commission . . . shall have *general jurisdiction* over all pari–mutuel thoroughbred horse racing activities in the State and the corporations engaged therein. 15 P.S. § 2651
   (a) Pursuant to the provisions of this act, the State Horse Racing Commission shall have power to *supervise generally* all thoroughbred horse race meetings in this State at which pari–mutuel betting is conducted. The commission *may adopt rules and regulations* not inconsistent with this act to carry into effect its purposes and provisions and to prevent circumvention or evasion thereof. (b) *Without limiting the generality of the foregoing, and in addition to its other powers*:
   [The Act goes on to describe specific powers of the Commission. The power to promulgate fee schedules is not among them.] 15 P.S. § 2652
   (Emphasis supplied)

*Relations Commission v. St. Joe Minerals Corporation, Zinc Smelting Division*, 476 Pa. 302, 310, 382 A.2d 731, 735 (1978):

> The power and authority to be exercised by administrative commissions must be conferred by legislative language clear and unmistakable. A doubtful power does not exist. Such tribunals are extrajudicial. They should act within the strict and exact limits defined.

Yet, "we are not limited to the mere letter of the law, but must look to the underlying purpose of the statute and its reasonable effect." *William Penn, supra,* 464 Pa. at 216, 346 A.2d at 293. The express purpose of the Act is to provide for and regulate thoroughbred horse racing and pari-mutuel wagering thereon. A pervasive system of regulation and supervision of this *otherwise criminal activity* was thus contemplated by the Commission's broad legislative mandate, and a general rule making power was clearly and unmistakably conferred. See note 5, *supra.*

In deciding an issue identical to that presently before us, the Supreme Court of Massachusetts held:

> [T]he Legislature established the overall plan under which such meetings could be licensed and conducted, but it did not attempt to legislate on all of the details of the operation of the meetings. Instead it used the broadest of language possible in § 9 to delegate "full power" to the Commission to prescribe rules, regulations and conditions for the conduct of such Meetings. We hold that Rule 281 relating to fees payable to jockeys "in the absence of special agreement" is within the scope of the rule-making power delegated to the Commission by the Legislature. . . .
>
> While [the authorizing statute] removed the stigma of illegality from the operation, it did not remove all of the many perils, pitfalls, temptations and traps for the unwary, nor the occasions for corruption for the participants, all of which are inherent in any gambling operation of such proportions. The Legislature recognized the existence of these dangers unless the racing meetings were strictly governed and controlled by rules covering the

many details which the statute did not cover. It [is] contemplated that the Commission would be best equipped to supervise the racing operations, and it gave the Commission the very broad powers necessary to accomplish the purpose.

*Colella v. State Racing Commission*, 360 Mass. 152, 157–160, 274 N.E.2d 331, 334–336 (1971).[8]

The latitude of the standards controlling exercise of the rulemaking powers expressly conferred on the Commission must be viewed in light of the broad supervisory task necessary to accomplish the express legislative purpose. The breadth of the Commission's powers is required for the prevention of corruption and the maintenance of high standards and public confidence in racing. The imposition of a jockey fee schedule is simply part of a comprehensive scheme of regulation consistent with—indeed, necessary to accomplish—those legislative goals.[9]

This Court has recognized the significance of an agency's long–standing construction of its statutory mandate:

The contemporaneous construction of a statute by those charged with its execution and application, especially when it has long prevailed, is entitled to great weight and should not be disregarded or overturned except for cogent reasons and unless it is clear that such construction is erroneous.

*Higher Education Assistance Agency v. Abington Memorial Hospital*, 478 Pa. 514, 521, 387 A.2d 440, 443 (1978), quoting

---

8. The Court below was persuaded by the rationale of the Illinois Supreme Court which concluded that the Racing Board of that state lacked the power to fix compensation of jockeys. *Chicago Division Horsemens' Benevolent and Protection Agency v. Illinois Racing Board*, 53 Ill.2d 16, 289 N.E.2d 421, (1972). The statutory language conferring powers on the Illinois Board (8 Ill.Stat. § 37a7) is considerably narrower, however, than Section 2652 of the Pennsylvania Act.

9. In the exercise of its supervisory responsibilities, the Commission reasonably has concluded that in order to deter criminal influence in the horse racing industry it is vital, *inter alia*, to guarantee adequate fees for jockeys.

from *Federal Deposit Insurance Corp. v. Board of Finance & Revenue*, 368 Pa. 463, 471, 84 A.2d 495, 499 (1951). Moreover, the Legislature's acquiescence in the Commission's exercise of its rule–making power to set jockey fees manifests approval thereof. Indeed, when the Legislature amended the Act in 1976, no effort was made to curtail that authority, even though the section enumerating the powers of the Commission (§ 2652) was among those amended (Act of Dec. 2, 1976, P.L. 1249, No. 276, § 1). The United States Supreme Court has recognized the "venerable principle that the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong, especially when Congress has refused to alter the administrative construction. . . ." *Red Lion Broadcasting Co. v. F. C. C.*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969). More recently, the Court reaffirmed that:

> . . . [A] court may accord great weight to the long-standing interpretation placed on a statute by an agency charged with its administration. This is especially so where Congress has re–enacted the statute without pertinent change. In these circumstances, congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress.

*NLRB v. Bell Aerospace Co. Div. of Textron, Inc.*, 416 U.S. 267, 275, 94 S.Ct. 1757, 1762, 40 L.Ed.2d 134 (1974).

We hold that promulgation by the Commission of the jockey fee schedule falls clearly within its broad grant of legislative authority. Accordingly, judgment on the pleadings is reversed and the matter is remanded to the Commonwealth Court for factual findings and legal conclusions on the issues raised by appellees but not reached below.

NIX, J., concurred in the result.

FLAHERTY, J., dissents.