**TRI–COUNTY INDUSTRIES, INC. and Tri–County Landfill, Inc., Petitioners,**

v.

**COMMONWEALTH of Pennsylvania, Department of Environmental Protection, Respondent.**

**Eagle Environmental II, L.P., Petitioner,**

v.

**Commonwealth of Pennsylvania, Department of Environmental Protection and Chest Township, Respondents.**

**Alliance Sanitary Landfill, Inc., Petitioner,**

v.

**Department of Environmental Protection; Old Forge Borough; Moosic Borough; Lackawanna County and Alliance Against Alliance, Respondents.**

Commonwealth Court of Pennsylvania.

Argued Nov. 6, 2002.

Decided Feb. 10, 2003.

As Amended Feb. 12, 2003.

Alan S. Miller, Pittsburgh, for petitioners, Tri–County Industries and Tri–County Landfill.

Jason E. Oyler, Harrisburg, for petitioner, Eagle Environmental II.

Robert D. Fox, Bala Cynwyd, for petitioner, Alliance Sanitary Landfill.

Dennis W. Strain, Harrisburg, for respondent.

David J. Gromelski, Scranton, for respondents, Borough of Old Forge, Borough of Moosic, Lackawanna County and Alliance Against Alliance.

BEFORE: COLINS, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, FRIEDMAN, Judge, and LEADBETTER, Judge.

OPINION BY Judge SMITH–RIBNER.

The Court granted permission to appeal in these consolidated cases to consider whether the "harms/benefits test" adopted by the Environmental Quality Board in the regulations at 25 Pa.Code §§ 271.127 and 287.127 is constitutional and is a proper exercise of authority conferred upon the Department of Environmental Protection (DEP) and the Environmental Quality Board by the Solid Waste Management Act (SWMA), Act of July 7, 1980, P.L. 380, *as amended*, 35 P.S. §§ 6018.101– 6018.1003, and the Municipal Waste Planning, Recycling and Waste Reduction Act (Act 101), Act of July 28, 1988, P.L. 556, *as amended*, 53 P.S. §§ 4000.101–4000.1904.[1] In general the regulations require applicants for permits to construct and to operate solid waste disposal facilities for residual or municipal waste to identify potential and real environmental harms from the proposed activity and to identify social and economic benefits. DEP shall approve projects only if it determines that the benefits clearly outweigh the harms.

Petitioners present the following questions for review: (1) whether the harms/benefits test is authorized by clear and unmistakable language contained in

---

**1.** These statutes govern the regulation of every aspect of the disposal of solid waste in Pennsylvania. *National Solid Wastes Mgmt. Ass'n v. Casey,* 143 Pa.Cmwlth. 577, 600 A.2d 260 (1991), *aff'd per curiam,* 533 Pa. 97, 619 A.2d 1063 (1993).

the SWMA or Act 101; (2) whether the reference to implementation of Article I, Section 27 of the Pennsylvania Constitution as among the purposes of the SWMA and Act 101 authorizes the Environmental Quality Board to promulgate the test; (3) whether authorization to the Board to promulgate the test constitutes delegation of authority to make basic policy choices in violation of the non-delegation doctrine of Article II, Section 1 of the Constitution; (4) whether the harms/benefits test is void for vagueness on its face for failure to provide discernible standards; and (5) whether the test falls outside the Commonwealth's police power.

## I

Tri–County Industries, Inc. (Tri–County) owns and operates the Tri–County Landfill in Mercer County, which is located within 6,600 feet of the Grove City Airport. In July 2000 Tri–County submitted to DEP a Substitute Repermitting Application pursuant to an agreement that resolved an earlier denial of a repermit. In December 2000 the Environmental Quality Board promulgated revisions to the environmental assessment criteria governing permits for municipal waste landfills. In 25 Pa.Code § 271.127(a) the applicant was required to identify in an environmental assessment the impacts of the proposed facility on the environment and on public health and safety, considering features including airports. Pursuant to Section 271.127(b) the applicant must describe known and potential environmental harms of the proposed project and how they would be mitigated. Under Section 271.127(c) the applicant "shall demonstrate that the benefits of the project to the public clearly outweigh the known and potential environmental harms." The applicant shall describe the benefits in detail, and they shall consist of "social and economic benefits that remain after taking into consideration the known and potential social and economic harms of the project and shall also consist of the environmental benefits of the project, if any." *Id.* This requirement is frequently referred to as the "harms/benefits test."

DEP denied Tri–County's application on the basis that, although benefits outweighed other known and potential environmental harms, after review by experts DEP was not convinced that Tri–County's proposal for mitigation of the hazard of birds striking aircraft in the area of the airport was adequate. Tri–County appealed, and before the Environmental Hearing Board (EHB), Tri–County moved for summary judgment challenging the validity of the harms/benefits test.

Eagle Environmental II, L.P. (Eagle) operates the Royal Oak Landfill in Chest Township, Clearfield County, which is a municipal waste disposal facility subject to the provisions of 25 Pa.Code § 287.127. That regulation was revised in January 2001, and it includes provisions essentially identical to those in Section 271.127 relating to residual waste facilities. In the application for its permit Eagle identified potential benefits including providing disposal of debris in a disaster, fees paid for training courses for operators at the landfill and the production of some coal as part of the excavation for the landfill construction. Real long-term benefits included a net gain in wetland acreage, reclaiming of a strip mine, improvement of roads leading to the landfill and benefits to wetlands and reduction of erosion from runoff. Real short-term benefits included providing jobs for local residents, payment of additional taxes, payment of a $2 per ton host fee to the township and provision of a recycling dropoff center. DEP approved Eagle's application on August 3, 2001, with a Condition 22, which required it to pro-

vide all of the benefits that it described in its application or be in violation of its permit. Eagle appealed, challenging the validity of the harms/benefits test and the imposition of Condition 22.

Alliance Sanitary Landfill, Inc. (Alliance) submitted an application for a 147–acre expansion to a municipal waste landfill that it operates in Taylor Borough, Ransom Township and the Borough of Old Forge, Lackawanna County. In May 2001 DEP denied the application, stating that Alliance failed to demonstrate that the benefits of the project would clearly outweigh harms, which included encroachment on wetlands, the effect of noise from heavy equipment on neighbors, negative impact on property values in the vicinity and the fact that it would be an unsightly feature in a prominent location. Alliance appealed as well.

On April 4, 2002, the EHB issued its decision denying Eagle's motion for summary judgment. It stated that the harms/benefits test was a reasonable means of implementing the purposes of the SWMA and Act 101 and concluded that the legislature had authorized the Environmental Quality Board to take into account economic and social considerations when implementing an effective solid waste program. The EHB concluded that the harms/benefits test in Section 287.127(c) comported with Article I, Section 27 of the Pennsylvania Constitution, noting that the SWMA and Act 101 expressly provide for implementation of this constitutional provision as a stated purpose and that the provision has been held to require balancing economic and social effects with environmental harms. The EHB questioned the relevance of Eagle's police power argument and rejected it, noting the breadth of

the scope of the police power. Finally, the EHB rejected the contention that the harms/benefits test is unconstitutionally vague, stating that the speculative danger of arbitrary enforcement did not render the provision void and that it would be impractical to write the regulation with further specificity.

On April 8, 2002, the EHB issued an order denying Alliance's motion for summary judgment and granting DEP's partial motion for summary judgment, considering that its holding in the Eagle case applied with equal force to 25 Pa.Code § 271.127(c). On April 11, 2002, the EHB issued a similar order denying Tri–County's motion for summary judgment. The EHB later modified its orders to certify the cases for interlocutory appeal, and this Court consolidated the cases.[2]

## II

■ All three Petitioners first argue that the harms/benefits test is not authorized by clear, unambiguous language in the SWMA or in Act 101. They note that Article II, Section 1 of the Pennsylvania Constitution vests the General Assembly with the legislative power of the Commonwealth. Tri–County cites *Sullivan v. Department of Transportation, Bureau of Driver Licensing*, 550 Pa. 639, 708 A.2d 481 (1998), where the court stated that the power of "substantive enactment" is reserved to the legislature, which must make "basic policy choices" when it delegates policy-making authority to an agency. In *Green v. Milk Control Commission*, 340 Pa. 1, 3, 16 A.2d 9, 9 (1940), the court stated: "The power and authority to be exercised by administrative commissions must be conferred by legislative language

**2.** On review of the EHB's orders entering summary judgment, this Court may reverse if there has been an error of law or an abuse of discretion. *Global Eco–Logical Servs., Inc. v. Department of Environmental Protection*, 789 A.2d 789 (Pa.Cmwlth.2001).

clear and unmistakable. A doubtful power does not exist."

■ The EHB noted that the Supreme Court has long recognized a distinction between the authority of a rule adopted pursuant to an agency's legislative rule-making power and its interpretive rule-making power. The former results from a grant of legislative power by the legislative body, and it is "valid and as binding upon a court as a statute if it: (a) is within the granted power, (b) is issued pursuant to proper procedure, and (c) is reasonable." *Housing Authority of the County of Chester v. Pennsylvania State Civil Service Commission*, 556 Pa. 621, 634–635, 730 A.2d 935, 942 (1999). Petitioners agree with this citation, and they also agree that only the first item is at issue, but Tri–County argues that the EHB incorrectly leaped to the third prong of the test when it stated that the question essentially was whether the harms/benefits test was a reasonable means of implementing the purpose and provisions of the SWMA and Article 101 in the context of a landfill permit review process.

The Court agrees with DEP that the EHB examined the statutes for authority for the harms/benefits test. The EHB quoted from Section 102 of the SWMA, 35 P.S. § 6018.102, relating to legislative finding; declaration of policy:

> The Legislature hereby determines, declares and finds that, since improper and inadequate solid waste practices create public health hazards, environmental pollution, and economic loss, and cause irreparable harm to the public health, safety and welfare, it is the purpose of this act to:
>
> . . .
>
> (4) protect the public health, safety and welfare from the short and long term dangers of transportation, pro-cessing, treatment, storage, and disposal of all wastes;
>
> . . .
>
> (10) implement Article I, section 27 of the Pennsylvania Constitution; and
>
> (11) utilize, wherever feasible, the capabilities of private enterprise in accomplishing the desired objectives of an effective, comprehensive solid waste management program.

The EHB also quoted Section 102(a)(7) of Act 101, 53 P.S. § 4000.102(a)(7), stating a legislative finding that it is "appropriate to provide those living near municipal waste processing and disposal facilities with additional guarantees of the proper operation of such facilities and to provide incentives for municipalities to host such facilities," and Section 102(b)(7), 53 P.S. § 4000.102(b)(7), including a statement that a purpose of Act 101 was to "[e]stablish a host municipality benefit fee for municipal waste landfills and resource recovery facilities that are permitted on or after the effective date of this act and to provide benefits to host municipalities for the presence of such facilities."

Tri–County argues that the express purpose of the SWMA is to protect the public health, safety and welfare from the effects of improper and inadequate solid waste practices through means such as requiring permits for residual waste facilities. In Section 105(a) of the SWMA, 35 P.S. § 6018.105(a), the legislature provided that the Environmental Quality Board should have the power and duty to adopt the rules, regulations, criteria and standards of DEP to carry out the provisions of the Act, including rules and regulations relating to the protection of safety, health, welfare and property of the public and the air, water and other natural resources of the Commonwealth. Tri–County notes that Sections 502 and 503 of the SWMA, 35 P.S. §§ 6018.502 and 6018.503, provide the

criteria governing the application for and issuance of permits. It acknowledges that Section 502(f) provides: "The department may require such other information, and impose such other terms and conditions, as it deems necessary or proper to achieve the goals and purposes of this act." Nevertheless, Tri–County argues that it is not a stated purpose of the SWMA to require applicants to provide social or economic benefits.

Further, Tri–County argues that Act 101 does not provide clear and unmistakable language authorizing a harms/benefits test. A reference in Section 507(a)(2)(iii), 53 P.S. § 4000.507(a)(2)(iii), to consideration of "economic factors" relates solely to the subject of location of a proposed facility and should be deemed to exclude such consideration otherwise.[3] Moreover, Act 101 expressly provides for three fees, which represent the legislature's determination of specific benefits that a municipal landfill must provide. Tri–County and Alliance assert that when the legislature intends a harms/benefits test to be employed, it says so expressly, as in Section 4.1 of the Coal Refuse Disposal Control Act, Act of September 24, 1968, P.L. 1040, *as amended,* added by Section 4 of the Act of December 7, 1992, P.L. 792, 52 P.S. § 30.54a, which provides: "Where, however, the adverse environmental impacts of the preferred site [for coal waste disposal] clearly outweigh the public benefits, the site shall not be considered a preferred site."

DEP responds that the legislature in Section 105(a) of the SWMA, 35 P.S. § 6018.105(a), conferred power upon the Environmental Quality Board

to adopt the rules, regulations, criteria and standards of the department to accomplish the purposes and to carry out the provisions of this act, including but not limited to the establishment of rules and regulations relating to the protection of safety, health, welfare and property of the public and the air, water and other natural resources of the Commonwealth.

It notes that in essentially identical language both the SWMA and Act 101 state purposes of establishing and maintaining a cooperative state and local program of planning for comprehensive solid waste management; protecting the public health, safety and welfare from short-term and long-term dangers of transportation, processing, treatment, storage and disposal of wastes; providing a flexible and effective means to implement and enforce the provision of each Act; and implementing Article I, Section 27 of the Constitution.

DEP distinguishes *Sullivan* because that case involved purported administrative entry into the interstate Driver License Compact of 1961 although the compact expressly required that a state "enact" it into law. In *Blackwell v. State Ethics Commission,* 523 Pa. 347, 567 A.2d 630 (1989), *aff'd,* 527 Pa. 172, 589 A.2d 1094 (1991), also relied upon by Tri–County, a leadership committee of legislators purported to extend the term of a commission after it expired pursuant to statute, and the Supreme Court held that only the full House and Senate could extend the term. These cases, DEP notes, are very different from adoption of regulations by an agency pursuant to a grant of authority.

---

**3.** Eagle, which is not considered to be subject to the municipal waste provisions of Act 101, notes that Section 1301 of Act 101, 53 P.S. § 4000.1301, specifically provides for a "host municipality benefit fee," and it argues that

absence of a similar provision in the SWMA undercuts any authority of the Environmental Quality Board to require benefits under SWMA.

DEP argues that the Supreme Court established the law relating to agency rule-making in *Gilligan v. Pennsylvania Horse Racing Commission*, 492 Pa. 92, 422 A.2d 487 (1980), where it was contended that the Horse Racing Commission exceeded its authority by adopting regulations setting a fee schedule for jockeys, which was not mentioned in the applicable act. The court stated that the legislature may not delegate the power to make law to another branch of government or other entity, but it may confer authority and discretion in connection with the execution of the law. The court acknowledged that administrative authority must be conferred by clear and unmistakable language. It discerned a policy to vest the Commission with broad general supervisory powers over a previously unlawful activity and held that a general rulemaking authority was clearly and unmistakably conferred. In light of the broad supervisory task necessary to accomplish the act's purposes, imposition of the jockey fee schedule was held to be part of a comprehensive scheme of regulation.

As DEP notes, in *National Solid Wastes Mgmt. Ass'n v. Casey*, 143 Pa.Cmwlth. 577, 600 A.2d 260 (1991), *aff'd per curiam*, 533 Pa. 97, 619 A.2d 1063 (1993), this Court rejected an effort by the Governor to interfere with the statutory municipal waste landfill permitting scheme and stated that a review of the SWMA and Act 101 and the regulations promulgated pursuant thereto indicated the Legislature's clear intent to regulate in plenary fashion every aspect of waste disposal. The Court agrees that the language of the SWMA and Act 101 clearly conferred broad supervisory power on the Environmental Quality Board over health, safety and welfare concerns beyond a narrow interpretation of simple protection of the environment from harm, and that the power conferred was broad enough to encompass the adoption of the harms/benefits test.

## III

■ Next Petitioners argue that the EHB erred in concluding that the reference to implementing Article I, Section 27 of the Pennsylvania Constitution as a purpose of the SWMA and of Act 101 authorized the Environmental Quality Board to promulgate the harms/benefits test.[4] The EHB relied upon this Court's interpretation in *Payne v. Kassab*, 11 Pa.Cmwlth. 14, 312 A.2d 86 (1973), *aff'd*, 468 Pa. 226, 361 A.2d 263 (1976). In that equity action seeking to block the widening of two streets in Wilkes–Barre, encroaching slightly on the River Common, the Court held that Article I, Section 27 was intended to allow normal development while at the same time affixing a public trust concept to management of natural resources.

The Court acknowledged in *Payne* that as a corollary of such a conclusion decision makers would be faced with the task of weighing conflicting environmental and social concerns. The Court's "realistic" review of such decisions would be pursuant to a threefold standard: (1) was there compliance with all statutes and regulations relevant to the protection of natural resources; (2) does the record show a reasonable effort to reduce the environmental incursion to a minimum; and (3) does the environmental harm that will result from the challenged action or decision so clearly

4. Article I, Section 27 provides:
   The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

outweigh the benefits to be derived therefrom that to proceed would be an abuse of discretion. Petitioners note that the Supreme Court stated that the required balancing of environmental and other social and economic concerns under Article I, Section 27 already had been performed by the legislature in the Act at issue, which required the Department of Transportation to consider some twenty-three specific social, economic and environmental effects of a transportation proposal. They assert that the EHB erred in concluding that Article I, Section 27 provided authority for its decision.[5]

The Court agrees with DEP, however, that the inclusion of implementing Article I, Section 27 as an express purpose of the SWMA (Section 102(10)) and of Act 101 (Section 102(b)(13), 53 P.S. § 4000.102(b)(13)) indicates that the legislature intended to authorize balancing of environmental concerns against social and economic ones. As DEP notes, because the SWMA and Act 101 were enacted after the decisions in *Payne,* the legislature is presumed to have acted with knowledge of the case law. *Wilson v. Wilson,* 126 Pa.Super. 423, 191 A. 666 (1937). The *Payne* analysis became the standard interpretation of Article I, Section 27, *see Concerned Citizens for Orderly Progress v. Department of Environmental Resources,* 36 Pa. Cmwlth. 192, 387 A.2d 989 (1978), and including implementing that provision as a purpose of the Acts provides support for regulations balancing environmental harms against social and economic benefits.

IV

Petitioners also assert that construing the general language in the purposes sections of the SWMA and Act 101 as authorizing the harms/benefits test violates the doctrine of non-delegation of legislative authority under Article II, Section 1 of the Pennsylvania Constitution. They cite *Blackwell,* 523 Pa. at 360, 567 A.2d at 637, where the Supreme Court stated: "While the General Assembly may, with adequate standards and guidelines, constitutionally delegate the power and authority to execute or administer a law, the prohibition against delegation of 'legislative power' requires that the *basic policy choices* be made by the General Assembly." Legislation must contain adequate standards to guide and restrain the exercise of the delegated administrative function. *Wings Field Preservation Assocs., L.P. v. Department of Transportation,* 776 A.2d 311 (Pa.Cmwlth.2001).

Tri–County and Eagle argue that requiring applicants to show that benefits outweigh harms is a "basic policy choice" that must be made by the legislature. Alliance contends that the "basic policy choice" that was made by the legislature, especially in Act 101, was that municipal landfills are not only permitted but are encouraged in order to counter the inadequate and rapidly diminishing processing and disposal capacity. *See* Section 102(a)(2) and (17) of Act 101, 53 P.S. § 4000.102(a)(2) and (17). DEP responds that the Environmental Quality Board did not make a "basic policy choice" in adopting the harms/benefits test but rather clearly carried out the will of the legisla-

---

**5.** Tri–County asserts that in *Concerned Citizens for Orderly Progress v. Department of Environmental Resources,* 36 Pa.Cmwlth. 192, 387 A.2d 989 (1978), the Court stated that under Article I, Section 27 neither the Department nor the EHB had authority to require a private developer to prove benefits; that was

the responsibility of the agency. As DEP points out, however, in context the Court's statement simply described the role of the agency in this pre-harms/benefits-test case in the course of carrying out balancing as described in *Payne.*

ture as expressed in broad legislative purposes stated in Sections 102 of the SWMA and of Act 101.

■ DEP notes that the Supreme Court stated in *Gilligan* that although the basic policy choices must be made by the legislature and the legislation must contain adequate standards to guide and restrain the exercise of the delegated administrative functions, "[t]his does not mean, however, that all details of administration must be precisely or separately enumerated in the statute." *Gilligan*, 492 Pa. at 96, 422 A.2d at 489. Furthermore, "substantive rulemaking is a widely used administrative practice, and its use should be upheld whenever the statutory delegation can reasonably be construed to authorize it." *Process Gas Consumers Group v. Pennsylvania Public Utility Commission*, 511 Pa. 88, 97, 511 A.2d 1315, 1320 (1986). It notes that in *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 181, 346 A.2d 269, 275 (1975), the Supreme Court upheld delegation of authority guided by a standard that a particular tax was "excessive and unreasonable." The court enumerated many less than precise standards that had been upheld such as that a community is "without adequate banking facilities." *Id.* at 215, 346 A.2d at 292. The Court concludes that the statutory provisions at issue provide adequate guidelines to withstand a non-delegation challenge.

## V

■ Tri–County and Eagle argue that the harms/benefits test is unconstitutionally void for vagueness on its face. For purposes of vagueness challenges, regulations are treated as statutes. *Watkins v. State Board of Dentistry*, 740 A.2d 760 (Pa.Cmwlth.1999). As they note, vague statutes deny due process of law when they do not give fair notice to persons of ordinary intelligence that their contemplated conduct might be unlawful and do not set reasonably clear guidelines for law enforcement officials and courts, thus inviting arbitrary and discriminatory enforcement. *Park Home v. City of Williamsport*, 545 Pa. 94, 680 A.2d 835 (1996). In *Watkins* this Court struck as vague a regulation that a dentist maintain "appropriate monitoring equipment" for administering general anesthesia.

■ Petitioners contend that the harms/benefits test is vague because an applicant of ordinary intelligence has no opportunity to know what benefits are required in order for the permit to be issued, and the particular benefits to be "extracted" from a permit applicant are left to the individual reviewer on a case-by-case basis, with no standard. DEP responds that in *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982), the Court noted that the degree of vagueness that is constitutionally tolerable depends in part on the nature of the enactment; specifically, economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow and businesses may be expected to consult relevant legislation in advance and to clarify meaning through inquiry or through an administrative process.[6] DEP notes that Petitioners have not shown that business

---

**6.** Moreover, DEP asserts, a statute is not void for vagueness by virtue of case-by-case decisions based upon it, citing *Slovak–American Citizens Club of Oakview v. Pennsylvania Liquor Control Board*, 120 Pa.Cmwlth. 528, 549 A.2d 251 (1988). In *Fabio v. Civil Service Commission of the City of Philadelphia*, 489 Pa. 309, 315, 414 A.2d 82, 85 (1980), it was held that in reviewing challenges based upon vagueness the courts must consider "both the essential fairness of the law and the impracticability of drafting the legislation with greater specificity." A law may withstand a constitutional challenge if it has been narrowed by

persons of ordinary intelligence are not apprised of the concept of weighing benefits against harms.

The Court notes at this juncture that Petitioners' repeated characterizations of "benefits" under the harms/benefits test as something akin to coerced contributions, monetary or otherwise, is not justified. As Alliance notes in its reply brief, DEP published in the Pennsylvania Bulletin on August 24, 2002 an Environmental Assessment Process, Phase I Review (EAP), providing a statement of policy for permit applications for municipal and residual waste disposal. The Court observes that those guidelines provide a detailed description of the types of harms that may arise in the operation of landfills, including some that may result even if there is full compliance with applicable laws. The EAP provides a similarly detailed discussion of benefits, including the following: "Benefits may arise inherently from the project (e.g., serving a need for disposal or processing capacity), or from compliance with the law (e.g., paying host municipality benefit fees and providing recycling drop-off centers), and benefits may also be intentionally created (e.g., charitable contributions)." *Id.*, p. 7. Thus benefits provided arise from the proposal itself and are not separate and unrelated.[7]

In sum, the Court does not deem that Petitioners have shown that the EHB

erred or abused its discretion in determining that the Environmental Quality Board was authorized to take into account economic and social considerations when implementing an effective solid waste program in Pennsylvania. Nor have they met the heavy burden of showing that the challenged regulations are invalid or otherwise unconstitutional. The Court therefore affirms the orders of the EHB.

Judge LEAVITT did not participate in the decision in this case.

### ORDER

AND NOW, this 10th day of February, 2003, the orders of the Environmental Hearing Board in the above-captioned cases are affirmed.

### DISSENTING OPINION BY Judge FRIEDMAN.

I respectfully dissent. I do not agree that the language of the Solid Waste Management Act (SWMA)[1] or the Municipal Waste Planning, Recycling and Waste Reduction Act (Act 101)[2] clearly and unambiguously confers on the Environmental Quality Board (EQB) the authority to promulgate a harms/benefits environmental assessment test which, under the guidelines published by the Department of En-

---

judicial interpretation, custom and usage. The court upheld the dismissal of a police officer on the basis of "conduct unbecoming an officer," which it concluded was not a novel or a nebulous concept.

**7.** This analysis also responds to Eagle's argument that the imposition of Condition 22 exceeded DEP's police power. Eagle notes that the test for determining the constitutionality of an exercise of police power is whether the interests of the public generally require interference and whether the means chosen are reasonably necessary for accomplishing the purpose and not unduly oppressive on indi-

viduals. *Commonwealth v. Barnes & Tucker Co.*, 472 Pa. 115, 371 A.2d 461 (1977). Eagle argues that compelling it to provide benefits wholly divorced from protection of the public weal is not reasonably necessary to protect against environmental harms. As noted, the benefits arise from the operation of the permitted facility and are not separate.

**1.** Act of July 7, 1980, P.L. 380, *as amended,* 35 P.S. §§ 6018.101–6018.1003.

**2.** Act of July 28, 1988, P.L. 556, *as amended,* 53 P.S. §§ 4000.101–4000.1904.

vironmental Protection (DEP), considers "establishing schools" and "charitable contributions" as possible "social and economic benefits" of a municipal or residual waste landfill.[3]

## I.  SWMA

The EQB has authority under section 105(a) of the SWMA to adopt regulations to accomplish the purposes of the SWMA. 35 P.S. § 6018.105(a).  The purposes of the SWMA include: (1) protection of the public from the dangers of solid waste; and (2) implementation of Article I, Section 27 of the Pennsylvania Constitution. *See* 35 P.S. § 6018.102(4), (10).  I do not believe that either of these purposes is accomplished by the establishing of schools or the making of charitable contributions.

First, it is not clear to me that establishing schools and enriching charities protects the public from the dangers of solid waste.  Second, it is not clear to me that implementing Article I, Section 27 means considering whether a landfill permit applicant has promised to establish a school or make a charitable contribution.  Article I, Section 27 of the Pennsylvania Constitution provides as follows:

> The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment.  Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

Pa. Const., Art. I, § 27.

The majority correctly points out that determining whether the Commonwealth

has violated its trust requires a court to examine whether the environmental harms resulting from the Commonwealth's action "so clearly outweigh the benefits to be derived therefrom that to proceed further would be an abuse of discretion." *Payne v. Kassab*, 11 Pa.Cmwlth. 14, 312 A.2d 86, 94 (1973), *aff'd*, 468 Pa. 226, 361 A.2d 263 (1976); (*see* majority op. at 581–82).  As the majority indicates, the Pennsylvania Supreme Court has enumerated twenty-three social, economic and environmental factors for courts to consider in performing an Article I, Section 27 balancing test. *Payne v. Kassab*, 468 Pa. 226, 361 A.2d 263 (1976); (*see* majority op. at 582).  However, the majority fails to mention that our supreme court's list does *not* include whether the Commonwealth considered a proposal to establish a school or make a charitable contribution. *See id.*  Thus, Article I, Section 27 does not provide a legal basis for the DEP's consideration of such factors as part of a harms/benefits environmental assessment test.

## II.  Act 101

The EQB has authority under section 302 of Act 101 to adopt regulations to accomplish the purposes of Act 101.  53 P.S. § 4000.302. One of the purposes of Act 101 is to "[e]stablish a host municipality benefit fee for municipal waste landfills and resource recovery facilities that are permitted on or after the effective date of this act and to provide benefits to host municipalities for the presence of such facilities."[4]  53 P.S. § 4000.102(b)(7).

Pursuant to this stated purpose of Act 101, section 1301 of Act 101 establishes the

---

**3.** *See* 25 Pa.Code § 271.127(c) (relating to municipal waste landfills); 25 Pa.Code § 287.127(c) (relating to residual waste landfills); and the DEP policy statement entitled "Environmental Assessment Process, Phase I

Review" at 7–8 (providing technical guidance for municipal and residual waste permit applications).

**4.** Other purposes of Act 101 include the protection of the public from the dangers of

host municipality benefit fee. *See* 53 P.S. § 4000.1301. Other sections of Act 101 provide additional benefits for host municipalities because of the presence of waste facilities.[5] However, because none of the additional benefits involves the establishing of schools or the making of charitable contributions, Act 101 contains no language that clearly and unambiguously authorizes the DEP to consider establishing schools or making charitable contributions in performing the harms/benefits environmental assessment test.

### III. General Supervisory Power

The majority concludes that the EQB has authority to promulgate a harms/benefits environmental assessment test that considers whether a permit applicant has agreed to establish schools in the community and make charitable contributions. The majority rests this conclusion on a legislative intent to have the EQB "regu-

late in plenary fashion every aspect of waste disposal." (Majority op. at 581) (citing *National Solid Wastes Management Association v. Casey*, 143 Pa.Cmwlth. 577, 600 A.2d 260 (1991), *aff'd*, 533 Pa. 97, 619 A.2d 1063 (1993)). As before, I see no connection between regulating waste "disposal"[6] and establishing schools or making charitable contributions.[7]

Accordingly, I would conclude that the harms/benefits environmental assessment test, utilized by the DEP to determine entitlement to a municipal or residual waste landfill permit, is invalid to the extent that it permits the DEP to consider establishing schools and charitable contributions as possible social and economic benefits of the municipal or residual waste landfill.[8]

---

municipal waste and the implementation of Article I, Section 27 of the Pennsylvania Constitution. *See* 53 P.S. § 4000.102(b)(3) and (13). These are similar to the purposes set forth in SWMA, which are discussed above.

5. *See, e.g.*, section 1101(a) of Act 101, 53 P.S. § 4000.1101(a) (requiring the DEP to provide host municipalities with facility inspection reports, notice of all enforcement actions and analyses of monitoring data); section 1102 of Act 101, 53 P.S. § 4000.1102 (requiring the DEP to train and certify host municipality inspectors and to perform its own inspection upon notice of a violation from a host municipality); section 1107(c) of Act 101, 53 P.S. § 4000.1107(c) (limiting the liability of a host municipality for bodily injury or property damage resulting from pollution occurrences); and section 1112(g) of Act 101, 53 P.S. § 4000.1112(g) (giving preference to waste generated within a host county).

6. Section 103 of Act 101, 53 P.S. § 4000.103, defines the word "disposal" as follows:

The deposition, injection, dumping, spilling, leaking or placing of solid waste into or on

the land or water in a manner that the solid waste or a constituent of the solid waste enters the environment, is emitted into the air or is discharged to the waters of this Commonwealth.

Section 103 of the SWMA, 35 P.S. § 6018.103, contains a similar definition:

The incineration, deposition, injection, dumping, spilling, leaking, or placing of solid waste into or on the land or water in a manner that the solid waste or a constituent of the solid waste enters the environment, is emitted into the air or is discharged to the waters of the Commonwealth.

7. Moreover, although the DEP has special knowledge and expertise with respect to waste disposal, the harms/benefits environmental assessment test requires that the DEP have special knowledge and expertise with respect to schools and charitable endeavors in municipalities throughout the Commonwealth, which, I submit, they do not have.

8. The petitioners in this case have suggested that "benefits" like the establishing of schools and the making of charitable contributions

are akin to coerced contributions. (*See* majority at ——, 818 A.2d at 583.) I agree. Indeed, it appears that an applicant who would not otherwise be entitled to a municipal or residual waste landfill permit based on the harms/benefits test could *buy* such a permit by agreeing to pay enough money that, according to the DEP's calculations, benefits would outweigh harms.