**[J-55-2022] [MO: Donohue, J.]**

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| THE MARCELLUS SHALE COALITION, | : | No. 69 MAP 2021 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 573 |
| | : | MD 2016 dated August 12, 2021. |
| v. | : | |
| | : | ARGUED:  September 15, 2022 |
| | : | |
| DEPARTMENT OF ENVIRONMENTAL | : | |
| PROTECTION  OF THE | : | |
| COMMONWEALTH OF PENNSYLVANIA | : | |
| AND ENVIRONMENTAL QUALITY BOARD | : | |
| OF THE COMMONWEALTH OF | : | |
| PENNSYLVANIA, | : | |
| | : | |
| Appellants | : | |


**DISSENTING OPINION**


**JUSTICE MUNDY**                                        **DECIDED:  April 19, 2023**

Pursuant to the Oil and Gas Act of 2012,[1] known as Act 13, the Department of Environmental Protection (the "Department") and the Environmental Quality Board (the "Board") (collectively, the "Agencies") promulgated rules regulating the development of unconventional oil and gas wells.  *See* 25 Pa. Code §§ 78a.1-78a.314.  The Marcellus Shale Coalition ("MSC") filed a complaint with the Commonwealth Court, in its original jurisdiction, challenging, *inter alia*, the validity of Section 79a.15(f) and (g) along with certain definitions in Section 78a.1.  MSC asserted the Agencies exceeded their statutory authority in promulgating those specific regulations and, by doing so, created an entirely new pre-permitting process without statutory authority.  After MSC filed an Application for

---

[1] Act of Feb. 14, 2012, P.L. 87, No. 13 (as amended 58 Pa.C.S. §§ 2301-3505).

Summary Relief, the Commonwealth Court performed a statutory construction analysis of Act 13 and the regulations at issue and determined that, while the Agencies had statutory authority to promulgate regulations to implement Act 13, they lacked statutory authority to promulgate the challenged regulations and that those regulations were void and unenforceable. The Lead Opinion finds the lower court erred in its determination and holds the Agencies were within their authority in promulgating the challenged regulations and that those regulations are reasonable. I respectfully disagree. I find the Commonwealth Court correctly determined the Agencies exceeded their authority in promulgating the challenged regulations. In addition, I find that the requirements related to "species of special concern" identified on a PNDI[2] receipt violate the Documents Law and are, therefore, void and unenforceable outside of any questions of statutory authority. As such, I dissent.

**Statutory Authority**

I agree with the Lead Opinion that the Agencies clearly have authority to promulgate regulations pursuant to Act 13. *See* 58 Pa.C.S. § 3274 ("The Environmental Quality Board shall promulgate regulations to implement this chapter."). The role of the Court in this case is not to determine whether the General Assembly gave the Agencies authority to promulgate regulations to implement Act 13 generally, but rather to determine if the Agencies had the authority to promulgate the specific regulations challenged by MSC. In answering that question, the Lead Opinion apparently relies on the broad grant of rulemaking authority in Section 3274 to determine that the Agencies had such authority as long as the General Assembly has not specifically and explicitly restricted them from promulgating a specific rule. *See* Lead Opinion at 26 ("In the absence of other statutory language, the broad grant within Section 3274 may serve as the enabling statute,

---

[2] *See* Footnote 4, *infra*.

arguably lessening the need to closely scrutinize what effect Section 3215 has within the broader legislative scheme."); *id.* at 27 ("The consequent question is whether Section 3215 operates as any limitation on the Agencies' powers to add 'public resources' other than those specified in subsection (c)"); *id.* at 28 ("That neither Section 3215 nor any other statutory provision explicitly binds the Agencies to a 'floor' invariably means that the Agencies were permitted to go farther."). In my view, however, the Lead Opinion has the question backwards. The Court must not ask if anything in an enabling statute **restricts** an agency from promulgating certain regulations, but rather if anything in the enabling statute **permits** an agency to promulgate the challenged regulations.

"Commonwealth agencies have no inherent power to make law or otherwise bind the public or regulated entities. Rather, an administrative agency may do so only in the fashion authorized by the General assembly[.]" *Nw. Youth Servs. v. Commonwealth, Dep't of Pub. Welfare*, 66 A.3d 301, 210 (Pa. 2013). Reliance on general rule making authority would provide an agency with almost unlimited and unrestricted authority to promulgate rules even remotely related to the purpose of the statute. In the Lead Opinion's view this vast authority can only be restricted if the General Assembly explicitly bars an agency from promulgating a specific rule. This proposition runs counter to the idea that the General Assembly's "delegation of [] rulemaking power [] must be 'clear and unmistakable' as a 'doubtful power does not exist.'" *Eagle Environmental II, L.P. v. Commonwealth, Dep't of Environmental Protection*, 884 A.2d 867, 878 (Pa. 2005) (quoting *Gilligan v. Pennsylvania Horse Racing Commission*. 422 A.2d 487, 490 (Pa. 1980)). An agency only has authority to promulgate rules that the General Assembly specifically gives them the authority to promulgate, and general rulemaking authority does not grant an agency authority to promulgate any rule that is remotely related to an

enabling statute unless the statute explicitly bars a specific rule. Authority beyond general rulemaking authority must be present.

The Lead Opinion states that this Commonwealth follows the approach set out by the United States Supreme Court in *Chevron, U.S.A. v. Nat. Res. Def. Council*, 467 U.S. 837 (1984), "which asks at the outset whether the General Assembly 'has directly spoken to the precise question at issue. If the intent…is clear, that is the end of the matter, for the court, as well as the agency, must give effect to the unambiguously expressed intent[.]'" Lead Opinion at 25 (quoting *Chevron*, 467 U.S. at 842-43.). Outside of the general rulemaking authority in Section 3274, however, the Lead Opinion only cites one section of Act 13 in support of the Agencies' authority to promulgate any of the challenged regulations, Section 3215(e) for the Agencies' authority to define "public resources." *Id.* at 26 (citing 58 Pa.C.S. § 3215(e)). Section 3215(e) states:

> **(e) Regulation criteria. –** The Environmental Quality Board shall develop by regulation criteria:
>
> > (1) For the department to utilize for conditioning a well permit based on its impact to the public resources identified under subsection (c) and for ensuring optimal development of oil and gas resources and respecting property rights of oil and gas owners.
> >
> > (2) For appeal to the Environmental Hearing Board of a permit containing conditions imposed by the department. The regulations shall also provide that the department has the burden of proving that the conditions were necessary to protect against a probable harmful impact of the public resources.

58 Pa.C.S. § 3215(e). According to the Lead Opinion, the presence of Section 3215(e) "requires the Agencies to develop specific regulatory criteria concerning 'the public resources identified under subsection (c)[.]'" Lead Opinion at 27 (quoting 58 Pa.C.S. §

3215(e)). By its clear language, however, Section 3215 does not grant the Board authority to define "public resources" as it is used in Section 3215(c) or to add additional resources to those listed.[3] The Lead Opinion does not cite any authority beyond the general rulemaking authority that authorizes the Agencies to promulgate the other challenged regulations. As Act 13 does not specifically and explicitly authorize the Agencies to promulgate the challenged regulations, it cannot be said, in my view, that the General Assembly has "directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842-43.

In light of the lack of explicit authorization, the question remains whether the General Assembly, through anything in Act 13, authorized the Agencies to promulgate the challenged regulations. In answering this question, the Commonwealth Court conducted a thorough statutory construction analysis, including the application of the doctrine of *ejusdem generis*,[4] and determined that Act 13 did not authorize the Agencies to promulgate any of the challenged regulations. *Marcellus Shale Coalition v. Department of Environmental Protection*, 193 A.3d 447, 469-85 (Pa. Cmwlth. 2018) ("*MSC*"). Specifically, the lower court determined that "[b]y defining 'other critical communities' to include 'species of special concern,'" the Agencies "expand[ed] on the list of public resources identified in Section 3215(c)" and did not track the statute. *Id.* at 476. As to "common areas of a school's property" and "playground," the panel determined they "do

___

[3] The Lead Opinion appears to recognize Section 3215(e) does not provide the Agencies any express authority to add additional resources as it states "[t]he consequent question is whether Section 3215 operates as any limitation on the Agencies' powers to add 'public resources' other than those specified in subsection(c)." LeadOpinion at 27.

[4] Under the doctrine of *ejusdem generis* ("of the same kind or class") "where specific terms setting forth enumeration of particular classes of persons or things following general terms, the general words will be construed as applicable only to person or things of the same general nature or class as those enumerated." *Department of Environmental Protection v. Cumberland Coal Resources, LP*, 102 A.3d 962, 976 (Pa. 2014).

not share the same attributes as the other public resources identified in the statute" and their inclusion in the regulatory definition of public resources was void and unenforceable. *Id.* at 481-82. Based on that holding, the Commonwealth Court determined that the regulations definition of "public resources agency," to the extent it includes owners of such recreational areas, fails by extension. *Id.* at 485. I concur with the Commonwealth Court's analysis, including its employment of the doctrine of *ejusdem generis*, which the Lead Opinion rejects, *see* Lead Opinion at 33-37, and therefore would adopt the Commonwealth Court's conclusions invalidating the challenged regulations.

## Use of the PNDI Receipt[5]

In addition to finding the Agencies lacked statutory authority to promulgate all of the challenged regulations, the Commonwealth Court also determined that the "requirements related to 'species of special concern' identified on a PNDI receipt violate[d] the Documents Law because they create a binding norm through a changing PNDI database that is not populated through notice and comment procedures." *Id.* at 477. The Lead Opinion disagrees and holds that the lower court erred by concluding the regulatory definition of "other critical communities" violates the Documents Law. Lead Opinion at 45.

The regulations define "other critical communities" as

---

[5] PNDI stands for the Pennsylvania Natural Diversity Inventory and is defined by the regulations as "[t]he Pennsylvania Natural Heritage Program's database containing data identifying and describing this Commonwealth's ecological information, including plant and animal species classified as threatened and endangered as well as other critical communities provided by the Department of Conservation and Natural Resources, the Fish and Boat Commission, the Game Commission and the United States Fish and Wildlife Services. The database informs the online environmental tool. The database contains only those known occurrences of threatened and endangered species and other critical communities, and is a component of the Pennsylvania Conservation Explorer." 25 Pa.Code § 75a.1. The Code defines a PNDI receipt as "[t]he results generated by the [PNDI] Review Tool containing information regarding threatened and endangered species and other critical communities." *Id.*

Other Critical Communities –

> (i) Species of special concern identified on a PNDI receipt including plant or animal species:

>> (A) In a proposed status categorized as proposed endangered, proposed threatened, proposed rare or candidate

>> (B) That are classified as rare or tentatively undetermined

> (ii) The term does not include threatened and endangered species.

25 Pa. Code § 78a.1. The Documents Law requires an agency to give "public notice of its intention to promulgate, amend or repeal any administrative regulations" and must review and consider any comments submitted. 45 P.S. § 1201; 1202. The PNDI database contains resources that have not gone through this notice and comment process. Commonwealth Court Preliminary Injunction Hearing, 10/25/16, N.T. at 153. As the Commonwealth Court explained, "[t]he provisions tied to the PNDI receipt effectively allow third parties to make changes to the regulation without meeting the requirement of formal rulemaking. Indeed, species of special concern are placed in the PNDI database and designated as such by the jurisdictional agencies, that is, the agencies with 'statutory authority to protect those species,' including DCNR, the Game Commission, the Fish and Boat Commission, and the Pennsylvania field office of the United States Fish and Wildlife Service." MSC, 93 A.3d at 473 (citing N.T. at 153-54).

The Agencies argue the Commonwealth Court erred because, while the outcome of the PNDI receipt is unique to each individual site, utilization of the PNDI process to identify public resources is a requirement that was established through valid legislative rulemaking. Appellant's Brief at 45. They further argue the Commonwealth Court confused the changing outcomes of the PNDI receipt with the process of utilizing the PNDI database. *Id.* at 46. For its part, the Lead Opinion observes that the Department

of Conservation and Natural Resources ("DCNR") is statutorily required to maintain an ecological survey of this Commonwealth, which DCNR accomplishes by, *inter alia*, maintaining the PNDI database. Lead Opinion at 43-44 (citing 71 P.S. § 1340.305(a)(10)). The Lead Opinion further argues that the Agencies gave public notice of the inclusion of the use of the PNDI receipt in the definition of "other critical communities" and did not change the manner in which the process works. *Id.* at 45. In the Lead Opinion's view it is the fact that "the basis for the statutorily mandated database does not" change that is determinative in holding the employment of the PNDI receipt does not violate the Documents Law, even though it recognizes that the results may vary over time. *Id.*

The Agencies' argument stems from a misunderstanding of why the Commonwealth Court found utilization of the PNDI receipt violated the Documents Law. The PNDI process itself is not what evades formal rulemaking. Rather, it is the inclusion in the database of resources that have not gone through formal notice and comment rulemaking. The inclusion of these resources within the Agencies' definition of "other critical communities" violates the Documents Law. The Lead Opinion's position is similarly flawed. Contrary to the Lead Opinion's position, DCNR's statutory obligations are irrelevant to the Agencies' requirement to comply with the Documents Law. The inclusion of the PNDI database itself is not the issue. It is the fact that, as the Lead Opinion observes, the results of the PNDI receipt may vary over time without going through the formal rulemaking process that causes the regulation to violate the Documents Law. It permits third parties to add to the regulations without going through the proper rulemaking process. Therefore, even if the Agencies had the statutory authority to define "critical communities" as they did, the employment of the PNDI receipt results in the definition render the regulation void and unenforceable.

For the above reasons, I would affirm the Commonwealth Court's grant, in part, of MSC's Application for Summary Relief. In my view, the Agencies exceeded their statutory authority in promulgating the challenged regulations and the employment of the PNDI receipt violates the Documents Law irrespective of the Agencies' statutory authority. Since the Lead Opinion holds otherwise, I respectfully dissent.